572 A.2d 258

**SUPERIOR TUBE COMPANY, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (UNGER), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 24, 1989.

Decided March 30, 1990.

Edward H. Feege, Duane, Morris & Heckscher, with him, Anthony J. Bilotti, for petitioner.

Marc S. Jacobs, Galfand, Berger, Lurie & March, for respondent, Mary Unger.

Before CRUMLISH, Jr., President Judge, and COLINS, J., and NARICK, Senior Judge.

CRUMLISH, Jr., President Judge.

Superior Tube Company (Superior) appeals a Workmen's Compensation Appeal Board order affirming the referee's decision to grant Mary Unger temporary total disability benefits. We affirm.

During her five years as a bench press operator for Superior Tube, Unger was continuously exposed to the industrial chemical solvent trichlorethylene (TCE).[1] In 1985, Unger informed her personnel director that her physician had diagnosed cirrhosis as a result of TCE exposure and advised her to wear a respirator mask to avoid further liver damage. Because this arrangement was unacceptable to Superior, it terminated Unger's employment until it could find an available job within her physical limitations. Unger did not work for approximately eleven weeks and sought disability benefits due to an occupational disease. Section 108(e) of The Pennsylvania Workmen's Compensation Act[2] (Act). The referee granted benefits on finding that TCE poisoning, sustained in the course of her employment, caused Unger's disability. Referee's Finding of Fact No. 12.

Superior contends that the referee should have dismissed Unger's claim. It argues that Unger was not entitled to the statutory presumption that her disability was work-related because there was no evidence of any occupational disease hazard.[3] We disagree.

1. Unger was employed with Superior from 1978 to 1981 and again from 1983 to 1985. She was required to clean machine dyes with TCE, a three-minute procedure, which Unger performed ten times per day, five days per week. Notes of Testimony of Mary Unger (N.T., Unger), 2/25/86, Reproduced Record (R.R.), pp. 17(a)–32(a).

2. Act of June 2, 1915, P.L. 736, *as amended,* added by the Act of October 17, 1972, P.L. 930, *as amended,* 77 P.S. 27.1(c). Section 108 provides in part:

> The term 'occupational disease,' as used in this act, shall mean only the following diseases.
>
> ....
>
> (c) Poisoning by menthanol, carbon disulfide, carbon monoxide, hydrocarbon distillates (naphthas and others)....

3. Section 301(c) of the Act provides:

■ To become eligible for compensation under Section 108 of the Act, a claimant must prove that she suffers from a disease as defined in that section and that she was exposed to its hazards in the course of employment. *Petillo v. Workmen's Compensation Appeal Board (B.P. Oil Corp.)*, 108 Pa.Commonwealth Ct. 629, 530 A.2d 951 (1987). These are fact questions to be resolved by the referee. *Id.*

■ It is undisputed that TCE exposure can cause serious liver damage, and that TCE poisoning is a statutorily enumerated occupational disease.[4] Moreover, Unger's uncontroverted testimony discloses that she handled this substance daily and on a routine basis.[5] Although Superior presented scientific data establishing that the TCE air quality samples during Unger's employment complied with industry and federal standards, a referee may rely solely on the claimant's testimony of his working conditions to prove the existence of and exposure to an occupational hazard. *Witco–Kendall Co. v. Workmen's Compensation Appeal Board (Adams)*, 127 Pa.Commonwealth Ct. 509, 562 A.2d 397 (1989).

■ We hold Unger's own testimony supports the referee's finding that TCE poisoning was an existing occupational disease hazard to which Unger was exposed. Having shown that she suffers from a Section 108 occupational disease and was exposed in the workplace to its hazards, Unger is entitled to a rebuttable presumption that her

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.
> 77 P.S. § 413.

4. Both the employer and Unger's medical experts testified that trichlorethylene is a chemical that is toxic to the liver and can cause irreversible death to the liver cells. N.T., James T. Thorton, M.D., 12/17/87, R.R., p. 242(a); N.T. of Elizabeth D. Rock, M.D. (N.T., Rock), 3/4/87, R.R., p. 97(a). Dr. Rock's uncontroverted testimony further discloses that TCE is a hydrocarbon distillate. N.T., Rock, p. 101(a).

5. N.T., Unger, 2/25/86, R.R., pp. 17(a)–32(a).

disease arose in the course of her employment. Section 301(e) of the Act. *Marcks v. Workmen's Compensation Appeal Board (City of Allentown),* 119 Pa.Commonwealth Ct. 214, 547 A.2d 460 (1988).

Once Unger has established this presumption, she need not produce testimony on causation. *Id.* However, Superior, arguing alternatively that the presumption was rebutted, also contends that Unger's medical expert's testimony failed to establish any causal relationship. Again, we disagree.

The record discloses that Unger's treating physician testified with a reasonable degree of medical certainty that Unger's cirrhosis resulted directly from exposure to TCE.[6] Notwithstanding Superior's artful cross-examination to induce testimony on the possibility of other etiologies, Unger's doctor never recanted her initial assertion of causation and, in fact, reiterated on cross-examination that Unger's exposure to the TCE was the only explanation for the disease.[7]

Accordingly, the Board's order is affirmed.

## ORDER

The Workmen's Compensation Appeal Board order, No. A–96117, dated April 6, 1989, is affirmed.

---

6. N.T., Rock, 3/4/87, R.R., pp. 92(a), 97(c).
7. N.T., Rock, 3/4/87, R.R., p. 127(a).