598 A.2d 1035

**MAUGER AND COMPANY, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (WALTZ), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 16, 1991.

Decided Oct. 23, 1991.

Stephen J. Fireoved, for petitioner.

Christina J. Barbieri, for respondent.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Mauger & Company, Inc. (Employer) files a Petition for Review appealing an Order of the Workmen's Compensation Appeal Board, affirming the Decision of the Referee

granting the Fatal Claim Petition of Vera Waltz (Claimant) filed on behalf of her deceased husband, Harry Waltz.

On May 20, 1983, the deceased, Harry Waltz, who was employed as a gasoline truck driver by the Employer, suffered a work-related injury for which he received temporary total disability compensation when a 30–pound cast iron nozzle fell on his left foot. While hospitalized due to his injury, Claimant's husband developed thrombophlebitis of the left leg, for which he received anticoagulant medication. A chest x-ray also revealed that Claimant's husband suffered from lung cancer, for which he received radiation treatment. Claimant's husband continued the anticoagulant and radiation treatments and was released from the hospital on July 20, 1983. On July 26, 1983, he experienced breathing problems, was re-admitted and diagnosed as having a hemorrhage of the blood vessels in his chest, and subsequently died.

On May 1, 1985, Claimant filed a Fatal Claim Petition (Original Petition) alleging that her husband's lung cancer was an occupational work-related disease, and was a substantial cause of his death for which compensation is payable under Section 301(c)(2) and 108(n) of The Pennsylvania Workmen's Compensation Act (Act).[1] Four years later, on May 10, 1989, Claimant sought to amend her Original Petition, alleging that the Employer had failed to provide her with certain pertinent medical records as required by Section 422 of the Act. 77 P.S. § 835. The Referee allowed the amendment (Amendment) which alleged that decedent's death was a result of a hemorrhage in the lung caused by the anticoagulant medication used to treat his original injury for which compensation is payable under Section 301(c)(1) of the Act. 77 P.S. § 411(1).

Hearings were held before the Referee which granted Claimant benefits on both theories of liability. The Referee found that the decedent suffered a work-related injury to his left foot, which resulted in thrombophlebitis, and that the treatment of this condition with anticoagulant medi-

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 411(2), 27.1(n).

cation caused pleural hemorrhaging which was the immediate cause of his death. (Referee's Finding of Fact (R.F.F.) No. 20). The Referee also found that decedent's lung cancer was due to his significant and prolonged exposure to diesel exhaust fumes in the course of his employment and was a substantial contributing factor in his death. (R.F.F. No. 21). The Employer appealed to the Board, which affirmed the Referee's Decision in all respects. The Employer then filed the instant appeal.[2]

### Occupational Disease

In order for Claimant to be successful, she must satisfy the requirements of Sections 301(c)(2) and 108(n) of the Act. Section 301(c)(2) of the Act provides that an injury arising in the course of employment shall include any occupational disease as defined in Section 108 of the Act. 77 P.S. § 411(2). Section 108(n) of the Act provides that an occupational disease shall mean:

> All other diseases (1) *to which claimant was exposed by reason of his employment,* and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population.

77 P.S. § 27.1(n) (emphasis added). *See also Pittsburgh Board of Education v. Workmen's Compensation Appeal Board (Perkins),* 108 Pa.Commonwealth Ct. 361, 529 A.2d 1166 (1987).

Under Section 108 of the Act, the question of whether the claimant was exposed to a hazard in the workplace is a question of fact to be resolved by the Referee. *Superior Tube Co. v. Workmen's Compensation Appeal Board (Unger),* 132 Pa.Commonwealth Ct. 191, 572 A.2d 258, *petition for allowance of appeal denied,* 526 Pa. 644, 584 A.2d 325

**2.** Our scope of review is limited to determining whether any finding of fact is not supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. *Cashmark v. Workmen's Compensation Appeal Board (Great A & P Tea Company),* 135 Pa.Commonwealth Ct. 464, 580 A.2d 1189 (1990).

(1990); *Petillo v. Workmen's Compensation Appeal Board (B.P. Oil Corp.),* 108 Pa.Commonwealth Ct. 629, 530 A.2d 951 (1987), *petition for allowance of appeal denied,* 518 Pa. 652, 544 A.2d 963 (1988).

Since claimant's exposure is a factual question, the claimant need not present scientific evidence or expert testimony to prove the existence of the hazard in the workplace. *Superior Tube Co.; Witco–Kendall Co. v. Workmen's Compensation Appeal Board (Adams),* 127 Pa.Commonwealth Ct. 509, 562 A.2d 397 (1989), *petition for allowance of appeal denied,* 525 Pa. 652, 581 A.2d 577 (1990). The Referee may rely solely on the testimony of the claimant or other witnesses to prove the existence of and exposure to the hazard. *Superior Tube Co.; Witco–Kendall Co.*

Employer contends that Claimant failed to satisfy her burden of proving that decedent suffered an occupational disease under Section 108(n) of the Act. Employer argues that Claimant failed to prove that decedent suffered prolonged exposure to diesel exhaust fumes, one basis upon which the Referee awarded benefits. We agree that there is no factual basis for that Referee's finding.

In his Findings of Fact, the Referee found that Claimant had satisfied the first criteria that her husband was exposed to diesel exhaust by reason of his employment. (R.F.F. No. 21). The Referee based this finding on the credible testimony of Claimant, who testified as to her husband's duties with Employer and the circumstances surrounding his foot injury. (R.F.F. No. 8). Claimant testified that her husband delivered gasoline in tractor-trailer trucks for the Employer since 1967, delivering some 25,000 gallons of fuel a day, five to six days a week, and that he would come home with his clothes smelling of gasoline. (R.F.F. No. 4; 14a, 23a–24a, 28a–29a).[3] Claimant also testified that her husband was in excellent health prior to the injury, never smoked ciga-

---

3. The numbers in the parentheses followed by an "a" refer to the Reproduced Record.

rettes, and never complained about shortness of breath. (R.F.F. No. 5; 14a–15a).

While Claimant clearly stated that decedent was exposed to gasoline fumes,[4] she never testified that her husband experienced any prolonged exposure to diesel exhaust fumes. She did not provide any testimony that her husband ever complained to her about exposure to diesel exhaust, nor did she testify that she ever observed him being exposed to significant amounts of diesel exhaust. Because Claimant had no personal knowledge of whether her husband was exposed to significant amounts of diesel exhaust, the Referee cannot base his finding of exposure to diesel exhaust on Claimant's testimony.

Claimant also presented the expert testimony of George Stanton (Stanton), a licensed engineer, to establish exposure to diesel exhaust which the Referee accepted and used as a basis for his finding that decedent was so exposed. (R.F.F. No. 9). Stanton testified, and the Referee found, that decedent had been exposed to significant amounts of benzene in the gasoline fumes, aldehydes in the diesel fuel, and diesel exhaust from the truck while working for the Employer. (R.F.F. Nos. 9, 12; 57a–60a, 62a–63a, 89a–90a). Stanton testified that decedent's exposure to diesel exhaust resulted from those fumes inhaled while standing outside the running truck while loading or unloading, leaks from the truck's exhaust system which came into the cab, and from other trucks while he stood in traffic. (R.F.F. No. 9; 65a–66a, 76a).

The Employer argues, however, that the testimony of George Stanton should be stricken insofar as it relates to exposure from diesel exhaust, because it is incompetent expert testimony. Employer argues that Stanton bases his

4. The Referee did not make any finding that the decedent's lung cancer was caused by exposure to the benzene or aldehydes in the petroleum products he was delivering. Although this was the stated cause of the lung cancer in Claimant's Original Petition, Claimant did not present any expert medical testimony to establish causation between the chemicals in the petroleum products and the decedent's lung cancer. (1a–2a).

opinion that decedent was exposed to diesel exhaust on evidence not of record, nor reasonable inferences therefrom, inasmuch as Stanton has no expertise in this area, did not view decedent's truck, and had no knowledge of his working conditions. The Employer contends that by striking Stanton's testimony, the Referee's finding that the decedent was exposed to a disease-causing agent while employed by the Employer would not be supported by substantial evidence. We agree.

Stanton testified that his expertise was in the area of the hazards associated with vapors from petroleum products, not those from exposure to diesel exhaust fumes. (51a–56a). Moreover, he testified that although he was familiar with the type of trucks driven by the decedent, he never viewed the actual trucks. (76a). Furthermore, Stanton testified that he did not talk with nor obtain information from the Employer or decedent's fellow employees regarding decedent's actual working conditions, including whether the truck was kept running while loading and unloading the fuel.[5] When asked for the basis of his opinion that decedent was exposed to diesel exhaust, Stanton replied "I've spent enough time on the highway to know, and I've seen enough diesel trucks in my life time to know that these drivers are exposed to the exhaust fumes. Certainly, when I'm driving on the turnpike, I am exposed to the exhaust from the diesel and I'm not driving a truck." (66a).

■ In order for an expert's testimony to be competent, it must be based on evidence of record or reasonable inferences drawn therefrom; it cannot be based on mere conjecture or assumption. *Collins v. Hand*, 431 Pa. 378, 246 A.2d 398 (1968); *Hawkins v. Workmen's Compensa-*

5. Stanton testified that the truck's diesel engine runs continuously, because it is needed to drive the delivery pump moving the fuel from the tank trailer to the service station tank. (65a). However, both the Employer, Claude Mauger, and a fellow employee, David Umberger, testified that the truck is never running, because the tank trailers use a gravity system to unload and the terminal operators won't permit it while loading. (201a, 278a).

*tion Appeal Board (Medical College of Pennsylvania),* 138
Pa.Commonwealth Ct. 180, 587 A.2d 387 (1991).

Although Stanton was knowledgeable in the area of exposure to petroleum products in their natural state, he possessed no more expertise in the area of exposure to diesel exhaust fumes than the average driver. Moreover, Stanton did not view any of the trucks in question, know of decedent's actual working conditions, nor possess any independent knowledge of the possible exposure to diesel exhaust normally experienced by truck drivers. Stanton had no way of knowing whether decedent was exposed to diesel exhaust while on the job. Because of his lack of knowledge of the condition of the truck decedent drove and his working conditions, Stanton was incompetent to testify as to whether the decedent was exposed to significant amounts of exhaust while on the job. Consequently, the Referee could not base his finding of exposure to diesel exhaust on the testimony of Stanton.

Because there is no testimony in the record on which the Referee could base his finding that decedent was exposed to significant amounts of diesel exhaust while on the job, this finding is not supported by substantial evidence and we must reverse the Referee's finding that decedent's death resulted from an occupational disease.

### Original Work–Related Injury

Employer also contends that Claimant has failed to meet the burden of proof necessary to establish that the decedent's death was a result of his prior work-related injury. Employer argues that the Amendment to the Original Petition was improper, and that Claimant did not establish that the hemorrhage was caused or accelerated by the use of anticoagulant medication.

■ We must first address the issue of whether the Referee's decision to allow the Amendment was proper. The decedent's work-related foot injury occurred on May 20, 1983. The statute of limitations for the filing of a Fatal

Claim Petition alleging that decedent's death resulted from this work-related injury expired on May 20, 1986, three years from the date of the death. *See* Section 315 of the Act, 77 P.S. § 602. However, at the May 19, 1989 hearing before the Referee, Claimant made a request to amend her Original Petition to allege that decedent's death resulted from his work-related foot injury and not merely from lung cancer. Claimant contended that such an Amendment was justified because the Employer failed to comply with Section 422 of the Act.

Section 422 of the Act states in relevant part:

*Where an employer shall have furnished surgical and medical services or hospitalization in accordance with the provisions of subsection (f) of section 306, [77 P.S. § 531]* or where the employe has himself procured them, the employer or employe *shall, upon request, in any pending proceeding, be furnished with,* or have made available, a true and complete record of medical and surgical services and hospital treatment, including x-rays, laboratory tests, and *all other medical and surgical data in the possession or under the control* of the party requested to furnish or make available such data.

77 P.S. § 835 (emphasis added).

This provision applies to medical services provided to the injured employee under Section 306(f) of the Act. Section 306(f) of the Act requires that "the employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed" for an employee who has suffered an injury on the job. 77 P.S. § 531(1). Section 306(f) also provides that if the employer provides the employee with a list of at least five designated physicians, the employee must visit at least one of them for a period of fourteen days from the date of his first visit. Thereafter, the employee is entitled to visit a physician of his own choosing. 77 P.S. § 531(1). If the employer provides a list of physicians, the physician who treats the employee must file periodic reports with the employer

which are to include history, diagnosis, treatment and prognosis. 77 P.S. § 531(2)(i).

In *Phillips v. Workmen's Compensation Appeal Board (Edgar Construction)*, 519 Pa. 31, 38, 545 A.2d 869, 872 (1988), the Pennsylvania Supreme Court, although equally divided on the merits of a decision to reopen a prior compensation agreement, all agreed that the requirement in Section 422 that medical records and data be given to the opposing side "is clearly mandatory and admits no exceptions."

In the present case, Claimant made a request to the Employer for all medical records and reports pursuant to Section 422 of the Act in July of 1985, ten months before the statute of limitations expired. However, Claimant did not receive any medical information from the Employer until March 1, 1989, when she received the report of Theodore Rodman, M.D., dated April 1, 1986. The content of Dr. Rodman's report indicated that decedent's death may have been at least partially caused by the anticoagulant medication used to treat the thrombophlebitis caused by the work-related foot injury. Dr. Rodman's report also referred to a report of R.L.A. Leunissen, M.D., decedent's treating physician, sent to the Employer's insurance company, Hartford, dated July 17, 1983.[6] Dr. Leunissen's report apparently contained pertinent information regarding the anticoagulant medication used to treat the foot injury and its effects on the decedent's blood. Claimant was not given either Dr. Rodman's or Dr. Leunissen's report until after the statute of limitations expired.

In opposition to the Amendment, the Employer contended that it was an inadvertent mistake not to send Dr. Leunissen's report from the Hartford Insurance Company file which they received following Claimant's request.[7] The Employer argued that Claimant could have subpoenaed these records directly from Dr. Leunissen. The Employer

6. Neither Dr. Rodman's nor Dr. Leunissen's report is part of the record before us.

7. The Employer does not deny that this was a report that had to be given to the employee under Section 422.

further contended that Dr. Rodman's report was not subject to the mandate of Section 422, and it need only be produced when he was named as a witness. The Employer also argued that Claimant had in her possession the discharge summaries from Crozer–Chester Hospital and a report from a Dr. Lapes, which contain the same information as Dr. Rodman's report. Claimant argued, however, that Section 422 is mandatory and that the Employer clearly violated it.

While we agree with the Employer that Dr. Rodman's report was not required to be produced pursuant to Section 422, the Employer was required to provide Claimant with a copy of Dr. Leunissen's report to Hartford Insurance Company, which it had in its files but inadvertently forgot to send to Claimant. Dr. Leunissen was treating Claimant for the thrombophlebitis caused by the foot injury he suffered during the course of his employment. The fact that Claimant could have possibly uncovered such information independently is of no moment, since Section 422 is mandatory and admits no exceptions to the Employer providing Claimant with all medical records.

Employer contends that even though it inadvertently failed to send a copy of Dr. Leunissen's report to Claimant, the Amendment, granted almost three years after the limitation period has run, is unjustified since it committed no fraud. Employer argues that *Phillips* requires a showing of fraud in order for Claimant to amend her Original Petition. In *Phillips*, however, the employer was seeking to nullify a ten year old compensation agreement which the Supreme Court stated could only be reopened by a showing of fraud or its equivalent. *Phillips*, 519 Pa. at 38–39, 545 A.2d at 872–873. Here, Claimant's request was for an amendment to her Original Petition, which requires only that she satisfy the requirements of Section 131.23(a) of Title 34 of the Pennsylvania Code which provides that "[a] party shall have the right to amend a pleading at any time in a proceeding before a referee, unless any other party to the proceeding establishes prejudice." 34 Pa.Code § 131.-

23(a).[8]   It is not up to Claimant to show fraud or its equivalent, but for the Employer to show that it is prejudiced by the Amendment.

The Employer cannot make a showing of prejudice because the document which contained the information on which Claimant based her alternative theory was in its possession during the entire time. This situation is distinguishable from the facts in *Mangine v. Workmen's Compensation Appeal Board (Consolidated Coal Company)*, 87 Pa.Commonwealth Ct. 543, 487 A.2d 1040 (1985), *overruled on other grounds, FMC Corporation v. Workmen's Compensation Appeal Board (Wadatz)*, 116 Pa.Commonwealth Ct. 527, 542 A.2d 616 (1988), cited by the Employer, where we held that an amendment to a claim petition after the limitation period had expired was prejudicial to the employer.

In *Mangine*, the employer was never put on notice as to the nature and circumstances of the claimant's new theory of causation. The Employer here had ample notice, since it possessed the reports which elaborated on Claimant's alternative theory. Since the Employer failed to provide Claimant with the required document, the Referee was properly acting within the scope of his authority in granting Claimant's request to amend her Original Petition.

■  We now address the issue of whether Claimant has met her burden of proving that her husband's death was caused by his foot injury. The Referee found that Claimant established that her husband's foot injury resulted in thrombophlebitis, which, due to its treatment with anticoagulant medication, caused the hemorrhaging in his lung which was the immediate cause of death.  (R.F.F. No. 20).

Section 301(c) of the Act provides that "wherever death is mentioned as a cause for compensation under this act, it

8. This Section was subsequently amended and recodified as Section 131.35(a), effective March 31, 1991, *see* 21 Pa.B. 1401 (1991). This Section now reads "..., unless the referee determines that another party has established prejudice as a result of the amendment." 34 Pa.Code § 131.35(a).

shall mean only death resulting from such injury *and its resultant effects."* 77 P.S. § 411(1). (Emphasis added.) In order to establish that a subsequent death resulted from a prior work-related injury, Claimant must present unequivocal medical testimony that establishes a causal connection between the prior injury and subsequent death. *See McCloskey v. Workmen's Compensation Appeal Board (J.H. France Refractories Inc.),* 501 Pa. 93, 460 A.2d 237 (1983).

The Referee specifically accepted the testimony of Claimant's medical expert, Harry Shubin, M.D., who is certified in pulmonary diseases, that decedent's primary cause of death was a hemorrhage in the pleural space, secondary to the administration of anticoagulant medications for treatment of the thrombophlebitis of his left foot. (R.F.F. Nos. 14, 18; 409a). Dr. Shubin testified that his opinion, within a reasonable degree of medical certainty, was that decedent died as a result of both the thrombophlebitis and the lung cancer. (408a–412a, 424a–425a). Moreover, Dr. Rodman, Employer's medical expert, testified consistent with Dr. Shubin, that his opinion, within a reasonable degree of medical certainty, was that Claimant's death was caused partly by the thrombophlebitis which resulted from his foot injury and partly by the lung cancer. (R.F.F. Nos. 16, 19; 242a). Based on this testimony, the Referee specifically found that the anticoagulant medication had accelerated decedent's death. (R.F.F. No. 14).

As this Court has stated on numerous occasions, it is within the Referee's power to determine which medical witness he or she accepts as credible, in whole or in part. *Rackocy v. Workmen's Compensation Appeal Board (M. Gordon & Sons),* 114 Pa.Commonwealth Ct. 625, 539 A.2d 505 (1988); *Bruckner v. Workmen's Compensation Appeal Board (Lancaster Area Vo–Tech),* 104 Pa.Commonwealth Ct. 290, 521 A.2d 980 (1987). We find that there is substantial evidence of record to support the Referee's determination that decedent's death was caused by his May

20, 1983 work-related foot injury. Thus, Claimant is entitled to fatal claim benefits because of her husband's death.

Accordingly, we will affirm the Order of the Board.

## ORDER

AND NOW, this 23rd day of October, 1991, the Order of the Workmen's Compensation Appeal Board, dated January 31, 1991, is affirmed.