617 A.2d 88

**Christopher MUNROE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (H & G DISTRIBUTING COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1992.

Decided Nov. 16, 1992.

George D. Walker, Jr., for petitioner.

L. Rostaing Tharaud, for respondent.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

PALLADINO, Judge.

Christopher Munroe (Claimant) appeals an order of the Workmen's Compensation Appeal Board (Board) affirming the referee's decision which had: 1) modified Claimant's compensation; 2) granted H & G Distributing Company (Employer) a credit for all compensation paid; and 3) ordered Employer to pay Claimant's attorney, Larry Pitt, Esquire, (Attorney) 20% of all compensation awarded since the date of the termination petition. We affirm in part and reverse in part.

Claimant, while employed as a bartender by Employer, injured his right hand and wrist on October 12, 1983. Thereafter, Claimant began receiving total disability payments of $134.55 per week pursuant to a notice of compensation payable. On July 10, 1986, Employer filed a petition for termination or, in the alternative, modification, alleging Claimant was no longer disabled. On August 26, 1986, Claimant retained Attorney to defend against the petition, and a 20% contingent fee agreement was signed. In 1987, the referee denied supersedeas, which had been requested by Employer when filing the termination petition.

At the referee's hearing, Claimant testified that he was concurrently employed as a gas station attendant when the work injury occurred, and he suffered back and neck injuries

in two automobile accidents in 1986, which prevented him from sitting or standing for long periods of time. Employer presented evidence on the availability of an in-home telephone solicitation job with "Fiber Clean".

The referee found that Claimant was unable to perform his pre-injury bartending or gas station jobs, but was able to perform the Fiber Clean job, and that Claimant's problems with sitting and standing were unrelated to his work injury of 1983. However, since the original notice of compensation payable did not consider Claimant's concurrent employment, the referee ordered an increase in compensation, from $134.55 to $166.33 per week, payable from the date of injury to December 7, 1987 (the day before the Fiber Clean job became available). Thereafter, the referee ordered the rate modified to $6.33 per week. The referee also ordered that Employer be given a credit for all compensation paid. In addition, the referee found that the 20% contingent fee agreement between Claimant and Attorney was reasonable and in accordance with the Act,[1] and ordered Employer to pay Attorney 20% of all compensation awarded from January 1, 1986 onward.[2] The Board affirmed.

In its decision, the Board ruled that Claimant's testimony regarding the Fiber Clean job was "obfuscatory", and Claimant did not in fact testify that he applied for the job. As such, the Board concluded Claimant failed to satisfy his burden under the third prong of the *Kachinski* test,[3] which states a claimant must follow through on job referrals in good faith. The Board added that the credit granted to Employer was appropriate under the "unique" circumstances of this case caused by Claimant's concurrent employment which increased compensation payable beyond the amount of credit available. Thus, the Board concluded that the retroactive modification of

1. *See* Section 442 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 998.

2. Apparently, both the referee and Employer, Employer's brief at 4, erroneously believed January 1, 1986 was the date the petition for termination and supersedeas was filed. The record shows that July 10, 1986 was the correct date.

3. *Kachinski v. Workmen's Compensation Appeal (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).

benefits based on the finding of job availability did not result in a credit against future payments. Finally, the Board concluded Attorney was only entitled to a fee on compensation awarded from 1986 onward, and was not entitled to a fee on all compensation awarded since the date of the injury. On appeal to this court,[4] Claimant challenges these conclusions, and seeks a reversal of the Board's order.

The following issues are presented on appeal: 1) whether the Board erred in concluding Claimant has not satisfied his burden of demonstrating good faith in following through on the Fiber Clean referral; 2) whether the Board erred in affirming the referee's grant of a credit to Employer, when Employer was simultaneously required to pay for an increase in Claimant's compensation payable; and 3) whether Attorney is entitled to a fee on all amounts of compensation since the date of the injury, or only those amounts since the date of the termination petition.

In *Kachinski,* our supreme court set forth the following test governing the modification of benefits:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380.

The *Kachinski* court added, "employees must make a good faith effort to return to the work force when they are able,

4. Our scope of review is limited to whether findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro),* 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990).

and their benefits can be modified for failure to follow up on referrals or for willfully sabotaging referrals." *Id.* at 252, 532 A.2d at 380.

On cross examination, Claimant testified as follows:

BY MR. McCADDEN:

Q. Did you receive a notice of a job at Fiber Clean?

A. Yes.

Q. Was that also a telephone job?

A. I believe so.

Q. And you would also be able to—I assume if you could talk on the phone for Potamkin, you could talk on the phone for Fiber Clean?

A. Yes, but there were also a lot of problems. I also have a problem driving. I have a great deal of problems driving. In fact we had to stop—I had [sic] 1970 Mach 1, which is a four speed shifter. I had to get another car, my mother-in-law's car, which is an automatic which I have been using to go to the doctor's appointments.

REFEREE PERNA: Did you keep the appointment to have an interview with Fiber Clean?

THE WITNESS: No, I did not get an appointment with them.

REFEREE PERNA: Did you call them for an appointment?

THE WITNESS: I called them and told them my situation. That is about as far as it went.

BY MR. McCADDEN:

Q. Isn't it true that the position at Fiber Clean would have been working out of your own home?

A. I don't know that. They didn't tell me that.

Tr. 23–24.

Claimant does not dispute the referee's finding that Claimant was physically able to perform the Fiber Clean job, but does dispute the referee's finding that the Fiber Clean job was "available" to Claimant. Claimant argues the position was not available since Claimant followed through on the referral and was not hired. Claimant cites *Young v. Workmen's Compen-*

*sation Appeal Board (Weiss Markets, Inc.),* 113 Pa.Common-wealth Ct. 533, 537 A.2d 393 (1988), *petition for allowance of appeal denied,* 520 Pa. 622, 554 A.2d 513 (1988), for the proposition that a job is not actually available unless there is evidence the prospective employer was willing to hire the claimant with his or her current physical limitations. Employer, on the other hand, argues Claimant explained his "situation" in such a way as to sabotage his chances of being interviewed by Fiber Clean, and accordingly fails to satisfy the third prong of the *Kachinski* test.

At the onset, it should be noted that Claimant's problems with sitting and standing, which stemmed from his non-work related automobile accidents, are irrelevant and were properly discounted by the referee; Employer only needed to show the Fiber Clean job was within those physical limitations causally related to the work-related injury. *Sheehan v. Workmen's Compensation Appeal Board (Supermarkets General),* 143 Pa.Commonwealth Ct. 624, 600 A.2d 633 (1991), *petition for allowance of appeal denied,* 530 Pa. 663, 609 A.2d 170 (1992). As such, Claimant's own brief seems to betray his argument that the Fiber Clean job was unavailable. The brief admits, "[Claimant] did not get an appointment once he described his physical problems (N.T. 3/17/88, p. 20–26). Claimant advised Fiber Clean of his work related right wrist injury *and his non-work related back problem which limited his ability to drive and/or sit for prolonged periods of time.*" Claimant's brief at 9 (emphasis added).

Nevertheless, the pertinent issue in this appeal from the Board is not Employer's burden of producing an "available" job referral under the second prong of the *Kachinski* test, but Claimant's burden of demonstrating good faith in following through on the referral under the third prong. Claimant has confused these two separate steps, and his reliance on *Young,* where this court held the *employer's* job referral efforts fell short of the *second prong* requirements laid down in *Kachinski,* is accordingly misplaced.

With the issue in proper focus, it becomes apparent Claimant did not make a good faith effort in following through

on the Fiber Clean referral. When Claimant's admission in his brief is read in conjunction with his testimony before the referee, Claimant's telephone call to Fiber Clean takes on all the indicia of a willful sabotage, effectively eliminating any chance for employment. Indeed, it is difficult to imagine any employer who would be willing to set up an interview with an applicant who describes all the reasons he should *not* be hired. As such, Claimant has not satisfied his burden of demonstrating good faith in following through on the Fiber Clean referral. Accordingly, we affirm the Board's order modifying Claimant's compensation.

■ With regard to the second issue, Employer argues that the "normal requirement" that an employer seek reimbursement from the supersedeas fund need not apply here since the credit cannot result in lower future payments to Claimant. However, neither Employer nor the Board cite any law in support of this proposition.

Reimbursement from the supersedeas fund is governed by Section 443 of the Act which plainly states:

(a) If, *in any case* in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor. . . .

(b) There is hereby established a special fund in the State Treasury, separate and apart from all other public moneys or funds of this Commonwealth, to be known as the Workmen's Compensation Supersedeas Fund. The purpose of this fund shall be to provide moneys for payments pursuant to subsection (a). . . .

77 P.S. § 999 (emphasis added).

In *Santarelli v. Workmen's Compensation Appeal Board (Patrick Dougherty Construction)*, 113 Pa.Commonwealth Ct. 281, 537 A.2d 894 (1988), this court noted Section 443(a) is quite specific, and since a supersedeas was requested and

denied, the Board erred in granting the employer a credit instead of directing the employer to the supersedeas fund. *See also Wausau Insurance Co. v. Workmen's Compensation Appeal Board (Fulton),* 138 Pa.Commonwealth Ct. 491, 494–95, 588 A.2d 592, 594 (1991) ("it is well established that an insurance company may not withhold credit from a claimant's benefit payments . . ."). Thus, Employer's argument, though logical, does not comport with precedent or the plain mandate of Section 443. Accordingly, we reverse the Board's order granting Employer a credit for all compensation paid.

■ With regard to the third issue, Claimant argues that under Section 442 of the Act the referee had no discretion to truncate Attorney's fee as long as such fee was less than or equal to 20% of the award.[5] Section 442 provides, in pertinent part, that:

> *[a]ll counsel fees,* agreed upon by claimant and his attorneys, for services performed in matters before any referee or the board, whether or not allowed as part of a judgment, *shall be approved* by the referee or board as the case may be, providing the counsel fees do not exceed twenty per centum of the amount awarded.

77 P.S. § 998 (emphasis added).

Claimant notes that since the referee found the 20% contingent fee agreement between Claimant and Attorney was reasonable and in accordance with the Act, the Board erred as a matter of law in failing to approve Attorney's fee on the entire amount awarded from the date of the injury.

Neither Claimant nor the Board cite any case law in support of their respective positions; however, a review of the relevant cases indicates Claimant has the stronger argument. In *Workmen's Compensation Appeal Board v. General Machine Products Co.,* 24 Pa.Commonwealth Ct. 95, 353 A.2d 911 (1976), this court held the Board erred as a matter of law when it limited an attorney's fee in a fatal claim case to 20% of

---

5. The fee agreement provides, in relevant part, "I (we) hereby agree that the compensation of my (our) attorney for services shall be determined as follows: 20% of any and all compensation payable to me." Employer's brief at R.17a.

the "first check". The court stated, "[c]learly, the statute allows a reasonable attorney fee based on the 'amount awarded', not a percentage of the 'first check'. The phrase 'amount awarded' is clear on its face. It includes *all amounts* awarded to a claimant in a referee's order." *Id.* at 101, 353 A.2d at 915 (emphasis added). The court added, "[b]ecause the agreement here did provide for a 20–percent fee, the referee's *only function* was to approve that fee as reasonable per se, in accord with the express wording contained in the first sentence of Section 442." *Id.* at 100–01, 353 A.2d at 914 (emphasis added). *See also Ford Aerospace v. Workmen's Compensation Appeal Board (Davis),* 83 Pa.Commonwealth Ct. 584, 478 A.2d 507 (1984) (under Section 442, employer was not entitled to have attorney's fee limited solely to the balance of the award remaining after employer's credit is subtracted); *Miller v. Workmen's Compensation Appeal Board (Snyder Memorial Health Care Center),* 149 Pa.Commonwealth Ct. 152, 612 A.2d 625 (1992) (under Section 442, the Board erred as a matter of law when it affirmed referee's reduction of agreed-upon attorney's fee from 20% to 15%). Although none of these cases matches the precise facts of the present appeal, all indicate this court's unwillingness to disturb a contingent fee agreement which is reasonable per se under Section 442. As such, the Board erred as a matter of law when it affirmed the referee's order limiting Attorney's fee to 20% of the amount awarded since 1986, and Attorney is entitled to 20% of the amount awarded since the date of the injury. Accordingly, we reverse the Board's order limiting Attorney's fee.

## ORDER

AND NOW, November 16, 1992, the order of the Workmen's Compensation Appeal Board modifying Claimant's compensation is affirmed, and said order granting Employer a credit for all compensation paid and limiting Attorney's fee is reversed.