**Marie A. GRAY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (PITTSBURGH BOARD OF EDUCATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 3, 1995.

Decided March 29, 1995.

John D. Hendricks, for petitioner.

Veleter M.B. Mazyck, for respondent.

Before McGINLEY and NEWMAN, JJ., LORD, Senior Judge.

NEWMAN, Judge.

Marie A. Gray (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) reversing a referee's decision granting her temporary total disability benefits from February 2, 1988 to May 7, 1990 and partial disability benefits as of May 7, 1990 to continue indefinitely because of exposure to occupational hazards in her workplace.

Claimant worked for the Pittsburgh Board of Education (Employer) for twenty years, the last eight years of which she was a secretary at the Washington Education Center (The Center). The Center provides vocational training to students in such areas as cooking, welding, carpentry and auto body repair. On September 12, 1989, Claimant filed a claim petition alleging that she was injured February 1, 1988 because of continual exposure to fumes and odors emanating from the auto body, welding and industrial arts divisions of the Center. Employer filed an answer, denying the material allegations of the petition.

Before the referee, Claimant testified that during her employment at the Center she

was exposed to and smelled various substances with lacquer and/or paint odor, and she occasionally saw vapor clouds in the Center. Claimant testified that following her exposure to these conditions, she suffered from headaches, chronic sore throats, pressure in her ears, burning eyes, fatigue and vomiting. According to Claimant, her symptoms gradually worsened over time, culminating in her seeking medical treatment February 1, 1988.

Claimant also offered the testimony of Suzanne Bailey, a substitute teacher for Employer. Bailey testified that during the 1986–1987 school year she also smelled various odors emanating from the building.

Dietrich A. Weyel, Ph.D., a certified industrial hygienist, also testified for Claimant. Dr. Weyel stated that he reviewed a survey done at Employer's request by NUS Corporation concerning potential airborne chemicals at the Center. Dr. Weyel testified that he believed the NUS report was an accurate representation of the hazards in the building. The NUS report specifically identified the hazards as paint fumes, welding fumes, and cooking smells.

Claimant's treating physician, T. Roy Kerry, M.D., who is board certified in otolaryngology and environmental medicine, testified that in his medical opinion Claimant suffered from hypothyroiditis,[1] a condition that was triggered by a chemical sensitivity reaction causally linked to Claimant's work environment.

Finally, Claimant offered the testimony of David L. Spence, M.D., a board certified neuropsychiatrist, who testified that Claimant suffered from an adjustment disorder with mixed emotional features and post-traumatic stress disorder that were a result of her workplace environment.

In opposition, Employer presented the testimony of Jeannie Jarzynka, Paul Shurman, and Nathan Ball, who were all current employees of Employer. Moreover, Richard C. Gerlach, Ph.D., who is a certified industrial hygienist, testified on Employer's behalf. Finally, Employer submitted the deposition testimony of Gregory J. Fino, M.D., and Stuart S. Burstein, M.D.

The referee accepted as credible and worthy of belief the testimony of Claimant, Bailey, Dr. Weyel, and Dr. Kerry.[2] The referee rejected Employer's witnesses as not credible.[3] The referee then determined that Claimant satisfied her burden of proof for temporary total disability benefits under Sections 108 and 301(c)(1) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 27.1 and 411(1). The referee however concluded that Claimant's disability became partial as of May 7, 1990, and he modified her benefits accordingly as of that date. Finally, the referee limited the attorney's fees of Claimant's counsel to a period not to exceed five years.

Both parties appealed the referee's decision to the Board. Specifically, Employer contended that substantial evidence did not support a finding that Claimant was exposed to dangerous chemicals and that the referee committed an error of law in concluding that Claimant satisfied her burden of proof under Sections 108 and 301(c)(1) of the Act.[4] In her appeal, Claimant asserted that the referee erroneously determined that her disability changed from total to partial disability as of May 7, 1990. Claimant also argued that the

---

1. Hypothyroiditis is a diminished production of thyroid hormone leading to thyroid insufficiency. *Steadman's Medical Dictionary,* 24th edition, 685.

2. The referee accepted the testimony of Dr. Spence as to causation but rejected his testimony as to Claimant's diagnosis of psychiatric injury.

3. The referee accepted as credible the cross-examination testimony of Employer's certified industrial hygienist, Dr. Gerlach, who stated during cross-examination that a person's exposure

to the chemicals found at the Center should be minimized because, *inter alia,* different people react differently to chemical exposures; that there are no safe levels of exposure, only acceptable levels; and that compliance with Occupational Safety and Health Administration standards does not necessarily guarantee that all employees will be symptom free.

4. Employer also raised the issue of whether the referee properly credited Employer for certain sickness and health benefits paid to Claimant.

referee improperly limited her attorney's fees.

The Board agreed with Employer's arguments and reversed the referee's decision, predicating its determination on the following:

> In the instant case, where genesis of the alleged vapors, fumes, odors and smoke has not been established and the amount of such exposure has not been quantified, and where the only scientific evidence as to the air quality at the work place has been rejected as not credible, medical testimony based upon claimant's lay testimony that she was exposed to these unidentified substances lacks the required unequivocal quality sufficient as a matter of law to support the claimant's burden of proof.

Board's Order and Opinion, dated May 23, 1994, at 6.[5]

■ Claimant now appeals to our court and presents the following three issues: (1) Whether the Board erred in reversing the referee's decision when his findings of fact were based on substantial evidence that Claimant was exposed to dangerous chemicals in the workplace; (2) Whether the referee erred in determining that Claimant's disability had changed from total to partial disability as of May 7, 1990; and, (3) Whether the referee erred in limiting the attorney's fees for her counsel to a period not to exceed five years.[6]

## I

With respect to the first issue, Claimant maintains that the Board erred in reversing the referee's decision because there was substantial evidence of record for the referee to conclude that Claimant had sustained her burden of proof pursuant to Section 301(c)(1)

of the Act.[7] Section 301(c)(1) provides in pertinent part that:

> [t]he terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury.

77 P.S. § 411(1).

■ To sustain an award under Section 301(c)(1) of the Act, the claimant must prove a causal relationship between the work-related incident and the alleged disability. *Odd Fellow's Home v. Workmen's Compensation Appeal Board (Cook)*, 144 Pa.Commonwealth Ct. 280, 601 A.2d 465 (1991). In addition, we have said that an injury need not be pinpointed to a specific event or definable incident so long as the injury arises in the course of employment and is related thereto. *Workmen's Compensation Appeal Board and Young v. Bethlehem Steel Corporation*, 23 Pa.Commonwealth Ct. 454, 352 A.2d 571 (1976).

■ With these principles in mind, we proceed with our analysis of Claimant's first issue. The Board determined that Claimant failed to establish either the genesis of the hazards or the amount of her exposure to these chemicals. We believe that the Board erred in this conclusion. Initially, we note that in *Witco–Kendall Company v. Workmen's Compensation Appeal Board (Adams)*, 127 Pa.Commonwealth Ct. 509, 562 A.2d 397, 400 (1989), *petition for allowance of appeal denied*, 525 Pa. 652, 581 A.2d 577 (1990), our court set forth the general rule that whether a hazard exists is a question of fact for the referee to determine. Further-

---

5. Given its disposition, the Board dismissed Claimant's appeal as moot.

6. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *aff'd*, 531 Pa. 287, 612 A.2d 434 (1992).

7. Claimant has abandoned her Section 108 claim. However, we have previously held that an employment-related disease, which is not an occupational disease under Section 108, may nonetheless constitute a compensable "injury" under Section 301(c). *Pittsburgh Board of Education v. Workmen's Compensation Appeal Board (Perkins)*, 108 Pa.Commonwealth Ct. 361, 529 A.2d 1166 (1987).

more, the court stated that a claimant's burden of proof related to this issue is not overly demanding. *Id.* We have also asserted that "[s]ince claimant's exposure is a factual question, the claimant need not present scientific evidence or expert testimony to prove the existence of the hazard in the workplace." *Mauger and Company v. Workmen's Compensation Appeal Board (Waltz),* 143 Pa.Commonwealth Ct. 198, 203, 598 A.2d 1035, 1037 (1991). "The referee may rely solely on the testimony of the claimant or other witnesses to prove the existence of and exposure to the hazard." *Id.*

Our review of the record indicates that Claimant's testimony alone was sufficient to demonstrate that she was exposed to hazards during her employment at the Center. Specifically, Claimant testified that she was exposed to various odors and fumes at the Center beginning in 1980 and continuing until her last day of employment in 1988. Reproduced Record (R.R.) at 15a and 22a. She identified the odors as "paint, varnish, thinner, gasoline, [and] oil type smells." *Id.* at 16a. Claimant further testified that she would occasionally see grayish-white fumes emanating from the Center. *Id.*

Not only was Claimant's testimony alone sufficient to establish that she was injured, her testimony was corroborated by Dr. Weyel, who testified as follows:

Q. Based upon your review of these various documents, have you been able to formulate an opinion of what type of chemicals or fumes Marie Gray was exposed to at her work?

A. Only a few were identified but, in general, those were fumes which were generated by other activities which were conducted in the school building.

Q. Such as what?

A. Paint fumes from, I guess it was a carpentry shop, some things she mentioned, also cooking smells from a kitchen and welding fumes, and I think that's it.

\*     \*     \*     \*     \*     \*

Q. Now, you said that you mentioned that only a few chemicals are identified, what do you mean by that?

A. Well, if you take an air sample of indoor air, there are many chemicals in the air and it is very difficult to quantify all of them, so in this particular case, only those chemicals which were suspected to come from paint product, mainly paint product, were identified, and *those are the solvents.*[8]

Q. When you say 'identify,' was that from the NUS testing?

A. Yes.

R.R. at 493a–494a (emphasis and footnote added).

*Our review of the NUS report indicates that it identified the existence of various hazards at the Center.* For example, testing revealed that tin, lead, methylene chloride, methanol, toluene, ammonia, styrene, polyester resin, talc, glass spheres, acetone, petroleum, zinc, nickel, xylene, isopropyl alcohol and others were evident at the Center. R.R. at 468a–470a.

■ In reversing the decision of the referee, the Board determined that because the referee rejected the testimony of Dr. Gerlach, whose employer, NUS, conducted the survey, the referee necessarily rejected the report detailing the existence of the specific hazards. We do not agree with the Board's reasoning. We note that the referee did not reject the NUS report. In fact, the referee specifically credited Dr. Weyel's testimony that the report was accurate regarding the hazards existing at the Center. Finding of Fact No. 12. We believe the fact that a referee rejects the testimony of an expert without more does not necessarily mean that the underlying scientific report is rejected. The only relevant fact drawn from such a determination is that the expert's conclusions extracted from the report are rejected. Thus, we hold that Claimant established that she was exposed to hazards in the workplace.

---

8. Dr. Weyel testified that "solvents are hydrocarbons, which are derived from—the majority are derived from oil, crude oil, they are added to paint to keep it liquid. They are engineered to evaporate upon the forming of the paint film and become volatile and are driven off." R.R. at 494a.

■ Having concluded that Claimant satisfied her burden that she was exposed to hazards at work, we must now address whether Claimant established a causal connection between her injury and her workplace. Where, as here, there is no obvious causal connection linking an injury to the workplace, the connection must be established by unequivocal medical testimony. *May Department Stores v. Workmen's Compensation Appeal Board (Smith)*, 105 Pa.Commonwealth Ct. 580, 525 A.2d 33, *petition for allowance of appeal denied*, 516 Pa. 624, 532 A.2d 21 (1987). Medical evidence that is less than positive or which is based upon possibilities may not constitute legally competent evidence to establish the causal relationship. *Id.* Finally, the question of whether medical testimony is equivocal is a question of law, and is to be determined by reviewing the entire testimony of the medical witnesses; such testimony is to be taken as a whole and a final decision should not rest upon a few words taken out of the context of the entire testimony. *Id.* Our review of the record indicates that Claimant satisfied her burden in this respect.

■ With respect to his medical diagnosis of Claimant, Dr. Kerry testified as follows:

Q. Okay. Doctor, did you arrive at a diagnosis of Mrs. Gray's problems?

A. Yes. In her history, we try to find the mechanism of her actions. On her first visit, she told us in detail of the exposure she had in her work place where her building is—her office is in an occupational vocational school.

She a secretary, and her office was above an auto body and welding shop and apparently had poor ventilation. She could always smell the paint and lacquers and welding fumes. In her early history, she reports having gone to emergency rooms, other physicians, and they showed low white [cell] counts; and she had an evaluation by a hematologist, and he felt that she had a low white count because of toxins, and this history leads us to believe that a large part of her problem comes from her work exposure.

\*     \*     \*     \*     \*     \*

Q. Doctor, did you arrive at a specific diagnosis?

A. Yes. From the medical standpoint, we have established that she has Hashimoto's allergic thyroiditis, and this is an autoimmune disorder. And, again, that's a relatively well-known diagnosis.

We, in our field, try to go further to explain the cause and effect mechanisms, *and in my opinion, she has also a chemical sensitivity reaction; and I feel that's the triggering cause of the actual Hashimoto's thyroiditis.*

\*     \*     \*     \*     \*     \*

We're going back to the true triggering cause in order to treat this condition. So we feel it's due to the chemical suppressing the T suppressor cells, and then the body becomes extremely reactive against the thyroid and damages its function, in just a few words.

\*     \*     \*     \*     \*     \*

Q. Doctor, based upon your education, your training and experience, and based upon the history given to you by Mrs. Gray, your examinations and treatment of Mrs. Gray and your review of the test results, do you have an opinion within a reasonable degree of medical certainty whether the exposures to chemicals at her work place was a substantial factor in bring about her symptoms and the diseases which you have described today?

A. Yes. *My opinion is that her set of symptoms and the diagnosis that we have established was caused by the period of working at her work place with the exposures of the chemicals in that location which have subsequently induced the damage to her immune function which led to the thyroiditis, the chronic yeast infections and the extreme degree of chemical sensitivity that she now demonstrates.*

R.R. at 292a–294a and 307a–308a (emphasis added).

It is apparent from the above testimony that Claimant's medical expert unequivocally established that Claimant's condition was

causally connected to her work at the Center. We, therefore, conclude, as a matter of law, that the above-quoted testimony is unequivocal. Claimant's remaining issues can be dealt with summarily.

## II

■ With respect to the second issue, Claimant contends that the referee erred in determining that her disability changed from a total disability to a partial one as of May 7, 1990. Our review of the record reveals that on that date, Claimant visited Dr. Kerry and advised him that her symptoms had improved. However, there is no evidence of record that Claimant's earning power was affected in any manner as of that date.[9]

Employer argues that because there is no evidence of record to support the referee's determination in this respect, this court should remand the matter for the taking of additional evidence on the issue of partial disability. However, we do not believe that a remand for the taking of additional testimony is in order. We have previously stated that we remand cases to the workers' compensation authorities when findings of the referee are not supported by the evidence or where a necessary finding was not made. *Fessler v. Workmen's Compensation Appeal Board (Nationwide Insurance Co.)*, 86 Pa.Commonwealth Ct. 198, 484 A.2d 422 (1984).

Our review of the instant record indicates that throughout the proceeding, Employer did not contend that Claimant's disability improved as of May 7, 1990. Thus, there is no corresponding evidence of an available job. *See Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Because the underlying issue was not before the referee, we believe that a remand for this determination is improper. We note that our decision does not foreclose Employer from filing a petition for termination, modification and/or suspension in the future.

## III

Finally, Claimant contends, and Employer concedes, that the referee improperly limited the fee of her attorney. We have previously held that this court is unwilling to disturb a contingent fee agreement which is reasonable per se under Section 422 of the Act, 77 P.S. § 998. *Miller v. Workmen's Compensation Appeal Board (Snyder Memorial Health Care Center)*, 149 Pa.Commonwealth Ct. 152, 612 A.2d 625 (1992). Moreover, in the factually similar case of *Munroe v. Workmen's Compensation Appeal Board (H & G Distributing)*, 151 Pa.Commonwealth Ct. 465, 617 A.2d 88 (1992), *petition for allowance of appeal denied*, 536 Pa. 634, 637 A.2d 294 (1993), we held that the referee erred as a matter of law when he limited the attorney fee to twenty percent of the claimant's benefits from 1986 and not from the date of the claimant's injury which was 1983. Thus, we agree with the parties that the referee erred as a matter of law when he limited the attorney's fees of Claimant's counsel for a period not to exceed five years.

Accordingly, we reverse the order of the Board and remand the matter to the Board with instructions to remand to the referee for a calculation of benefits and an award of attorney's fees consistent with this opinion.

### *ORDER*

AND NOW, **March 29, 1995,** we reverse the order of the Board and remand the matter to the Board with instructions to remand to the referee for a calculation of benefits and an award of attorney's fees consistent with this opinion.

---

9. Section 306(b) of the Act, 77 P.S. § 512, provides that any disability less than total is partial, and the extent of partial disability is measured by the loss of earning power.