# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cheryl Steele and Roy Steele   :
(deceased),       :
      Petitioner   :
         :
     v.      :   No. 875 C.D. 2016
         :   Submitted: November 10, 2016
Workers' Compensation Appeal   :
Board (Findlay Township),    :
      Respondent   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER       FILED: March 8, 2017

Cheryl Steele (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) that reversed the decision and order of a Workers' Compensation Judge (WCJ). The Board concluded the WCJ erred in granting Claimant's Fatal Claim Petition (Claim Petition) because she failed to introduce Pennsylvania Fire Information Reporting System (PennFIRS) reports to establish that her late husband, Roy Steele (Decedent), was directly exposed to carcinogens while serving as a firefighter with Imperial Volunteer Fire Department, as required under the Workers' Compensation Act (Act).[1] On appeal, Claimant argues the WCJ correctly relied upon the testimony of lay witnesses to

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1-1041.1, 2501-2708.

establish evidence of direct exposure. Further, Claimant argues that other sections of the Act provide a basis to grant the Claim Petition. We agree that the WCJ erred in granting the Claim Petition without PennFIRS reports, which are required of volunteer firefighters by the plain language of the Act. However, because neither the WCJ nor the Board considered whether Claimant was entitled to benefits under alternative sections of the Act, we remand for further proceedings.

Decedent joined the volunteer fire department in 1968. (WCJ Decision, Findings of Fact (FOF) ¶ 1.) Over the course of his career, he served as a lieutenant, assistant captain, captain, assistant chief, and chief. (Id.) Decedent held the position of fire chief for 20 years before stepping down in 2004 due to high blood pressure. (FOF ¶¶ 1-2.) Although he no longer served as chief, Decedent continued to respond to fires and served as captain up until the year before he died. (Id. ¶ 1.) In October 2009, he was diagnosed with stage 4 lung cancer. (Id.) Decedent died on August 5, 2011. (Id.)

On June 8, 2012, Claimant filed a lifetime claim petition on Decedent's behalf, alleging his cancer was caused by exposure to carcinogens recognized as Group 1 carcinogens by the International Agency for Research on Cancer (IARC), and therefore Decedent was entitled to total disability benefits under Section 108(r) of the Act.[2] (Lifetime Claim Petition, C.R. Item 1.) She filed the Fatal Claim Petition three days later. (Claim Petition, C.R. Item 2.)

At various hearings, in addition to Claimant, two fellow firefighters testified about Decedent's service. The first fellow firefighter served with Decedent for seven years, during which time he observed Decedent fighting fires and going into

---

[2] 77 P.S. § 27.1(r), added by Section 1 of the Act of July 7, 2011, P.L. 251.

structures during overhaul.[3] (FOF ¶ 3.) During this time, Decedent would have been exposed to smoke. (Id.) Although Decedent was chief and his primary responsibility was directing manpower, the first firefighter said there is still smoke outside of the structure. (Id.) In addition, the firefighter explained that Decedent would have been exposed to diesel fumes from the fire trucks at the station. (Id.) His testimony was corroborated by the testimony of the second fellow firefighter, who served with Decedent for five years, during which time Decedent was captain. (FOF ¶ 4.)

The current fire chief testified that of the approximately 150 calls per year, only six to eight are actual fires. (FOF ¶ 5.) He testified that Decedent managed a fire scene as a "fire ground chief," meaning he managed from his vehicle to avoid smoke and better visualize the fire ground. (Id.) The current fire chief never saw Decedent attack a fire from inside a building or physically fight a fire; however, he acknowledges Decedent would have entered structures during overhaul. (Id.) The current fire chief also disputed that a fire truck would idle for long periods of time inside the station. (Id.) Notably, no PennFIRS reports were introduced by either party.[4] Both parties also introduced expert testimony in support of their respective positions. (FOF ¶¶ 6-7.)

---

[3] Overhaul occurs when firefighters go into a structure after the fire has been suppressed to see where fire and hotspots remain. (FOF ¶ 3.)

[4] The current chief of the fire department testified at his deposition in 2013 that the department had been participating in the National Fire Reporting System for two years. (FOF ¶ 5.) It is not clear how the national system differs, if at all, from PennFIRS. Regardless, it is evident that neither national nor state records were available for the time period Decedent was an active volunteer firefighter. However, the current fire chief testified the fire department maintained its own records of who responds to fires and produced four boxes of such records, dating back to 1964, at his deposition pursuant to Claimant counsel's subpoena. (R.R. at 192, 242.) Of the four boxes, only one "incident report" was introduced into evidence. (R.R. at 269.)

3

The WCJ subsequently issued a decision and order on September 16, 2014, dismissing the lifetime claim petition,[5] but granting the Fatal Claim Petition. (WCJ Decision, Conclusions of Law (COL) ¶¶ 1-2.) The WCJ concluded that the lay testimony of Claimant and two fellow firefighters was sufficient to establish that Decedent was directly exposed to Group 1 carcinogens, and PennFIRS reports were not necessary as they were within the control of the Employer Findlay Township (Employer). (FOF ¶ 20.) The WCJ further concluded that Employer successfully rebutted the presumption under Section 108(r) of the Act,[6] but Claimant met her burden of demonstrating a work-related injury caused or contributed to Decedent's disability through the credible testimony of lay and expert witnesses. (FOF ¶ 19.)

Employer filed a timely appeal to the Board, challenging the WCJ Decision on two grounds. First, Employer argues the WCJ erred in awarding benefits in the absence of PennFIRS reports. Second, Employer contended the WCJ erred in rejecting its competency challenge to Claimant's expert. Upon review, the Board concluded the WCJ erred in accepting lay witness testimony instead of requiring

---

[5] Claimant did not appeal the dismissal of the lifetime claim petition.

[6] The presumption is actually contained in Section 301(e), 77 P.S. § 413, added by Section 3 of the Act of October 17, 1972, P.L. 930, which provides:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

As discussed below, Section 301(f), 77 P.S. § 414, added by Section 2 of the Act of July 7, 2011, P.L. 251, imposes additional conditions on the presumption that must be satisfied in cases of firefighters claiming cancer as an occupational disease.

4

the statutorily mandated PennFIRS reports.[7]  (Board Op. at 12-14.)  The Board reasoned that, under the terms of the Act, volunteer firefighters had to comply with special requirements to establish direct exposure to Group 1 carcinogens; namely, volunteer firefighters had to introduce PennFIRS reports as evidence of direct exposure to carcinogens.  (Id. at 12.)  Although Claimant herself testified about Decedent's exposure, along with two fellow firefighters, (id. at 3-4), the Board concluded that such lay witness testimony was insufficient under the terms of the Act.  (Id. at 11-12.)  In its thoughtful and thorough Opinion, the Board examined the legislative history of the amendments to the Act, which added the provisions in question, and stated "the Legislature clearly intended career and volunteer firefighters to be treated differently and therefore delineated the objective proofs necessary for a volunteer firefighter to maintain a Section 108(r) claim."  (Id. at 12.)  It concluded that lay testimony concerning Decedent's participation in fire calls was "not tantamount to 'evidence of direct exposure to a carcinogen referred to in [S]ection 108(r) as documented by reports filed pursuant to . . . [PennFIRS],'" which is required by the plain language of the Act.  (Id. at 13-14.)

Following the Board's reversal of the WCJ Decision, Claimant appealed to this Court.[8]  She asserts on appeal that the Board erred in finding her ineligible for benefits because of the lack of PennFIRS reports, and even if the reports are

---

[7] Because the Board disposed of the appeal on the first issue, it did not reach Employer's second issue.  (Board Op. at 14.)

[8] "Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or [whether] an error of law was committed."  Haddon Craftsmen, Inc. v. Workers' Comp. Appeal Bd. (Krouchick), 809 A.2d 434, 438 n.2 (Pa. Cmwlth. 2002).  To the extent this appeal turns on a question of statutory construction, our review is plenary.  Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.), 954 A.2d 776, 778 (Pa. Cmwlth. 2008).

necessary, she still would have been entitled to benefits under other sections of the Act.[9]  Employer responds by arguing that the plain language of the Act requires PennFIRS reports for volunteer firefighters and that Claimant failed to plead, and therefore waived, the ability to recover under different provisions of the Act.  We will address these issues in turn.

An occupational disease is defined in Section 108 as a compensable injury under the Act.  Section 301(c)(2), 77 P.S. § 411(2).  The definition of "occupational disease" was amended by Act 46 of 2011[10] to add Section 108(r), which specifically includes "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the [IARC]" as an occupational disease.  77 P.S. § 27.1.  As stated above, Section 301(e) provides a presumption that an occupational disease arose out of and in the course of a claimant's employment.  77 P.S. § 413.  In short, "where a claimant has an occupational disease listed in Section 108 of the Act, the claimant need not prove this occupational disease was caused by workplace exposure, as opposed to another exposure"; instead it is the employer's burden to show otherwise.  City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek), 144 A.3d 1011, 1020 (Pa. Cmwlth. 2016), petition for allowance of appeal granted (Pa. No. 13 EAP 2017, filed March 1, 2017).

However, as we stated in Sladek, Act 46 also added Section 301(f), which imposed an additional condition on the presumption where the occupational disease is cancer suffered by a firefighter.  Id.  Section 301(f) provides that a firefighter is entitled to benefits under Section 108(r), provided he can show:

---

[9] To ease disposition, we have reordered Claimant's issues.
[10] Act of July 7, 2011, P.L. 251.

6

(1) employment for four or more years in continuous firefighting duties; (2) direct exposure to an IARC Group 1 carcinogen; and (3) that he passed a physical examination prior to engaging in firefighting duties that did not reveal any evidence of cancer. 77 P.S. § 414. Important for purposes of this appeal, Section 301(f) further provides:

> Any claim made by a member of a *volunteer* fire company *shall* be based on evidence of direct exposure to a carcinogen referred to in section 108(r) *as documented by reports filed pursuant to [PennFIRS]* and provided that the member's claim is based on direct exposure to a carcinogen referred to in section 108(r).

Id. (emphasis added).

Recently, we have had occasion to interpret Sections 108(r) and 301(f) as they relate to career firefighters, see, e.g., Hutz v. Workers' Comp. Appeal Bd. (City of Phila.), 147 A.3d 35, 52-55 (Pa. Cmwlth. 2016), petition for allowance of appeal filed (Pa. No. 444 EAL 2016, filed October 3, 2016); Sladek, 144 A.3d at 1020-22;, but never in the context of *volunteer* firefighters and the additional requirement imposed upon them by Section 301(f). Our analysis, though, is guided by the same principles of statutory construction, which provide "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Furthermore, when words are free and clear of ambiguity, they are to be construed in accordance with their common and approved usage. 1 Pa. C.S. § 1903(a). Here, the Act clearly requires that in addition to the requirements all firefighters must establish, volunteer firefighters *shall* also provide evidence of direct exposure to carcinogens *as documented by PennFIRS reports*. The lay testimony of Claimant and two firefighters who fought alongside Decedent is insufficient to satisfy this requirement.

7

The Board, however, augmented its discussion of the plain language of the Act, by examining the legislative history of the Act. The Board compared House Bill 797, which was ultimately enacted as Act 46, with a predecessor version, House Bill 1231, which was passed by the House and Senate but vetoed by the Governor. The original bill provided:

> A claim made by a member of a volunteer fire company must be based on evidence of exposure to causal factors as documented by reports filed pursuant to [PennFIRS], if such fire company participates in the system, and provided that the member's claim is based on being exposed to causal factors on or after the date the fire company began to utilize the reporting system.

H.B. 1231, 2009-10 Reg. Sess., Printer No. 2547. A later version of the bill removed the language "if such fire company participates in the system" and made a few other non-substantive changes. See H.B. 1231, 2009-10 Reg. Sess., Printer No. 4393. Act 46 uses substantially the same language as its predecessor bill and also omits the language "if such a fire company participates in the system." This signals that the General Assembly was cognizant that not all volunteer fire companies participate in PennFIRS, but such reports would still be required under the Act, thereby potentially foreclosing claims by those who did not participate. Further evidence of this awareness is found in comments of the bill sponsor, who explained one of the rationales behind the requirement was to provide "a built-in incentive for volunteer fire companies to fully utilize the PennFIRS system and [] push them to provide thorough information when filling out their PennFIRS reports." Pa. Legis. Journal – House, June 21, 2011, at 1338. He further explained that "the utilization of the PennFIRS system would serve to document that the volunteer firefighter was present at an incident where a known carcinogen was present." Id. Therefore, the legislative history confirms an intent that volunteer

8

firefighters were to be treated differently than career firefighters. In cases such as this, where the amount of actual exposure of the volunteer firefighter is disputed, the conflict is resolved by requiring objective, documentary evidence of exposure to carcinogens in the form of PennFIRS reports. Here, no such evidence was presented. Thus, the Board correctly determined Claimant did not and could not establish direct exposure to Group 1 carcinogens through her lay witness testimony and was therefore ineligible for benefits under Act 46.

Our inquiry does not end here, however. Claimant asserts that regardless of whether PennFIRS reports are required, other sections of the Act – namely, Section 108(o) and/or Section 301(c)(1) – would still provide her with relief. 77 P.S. §§ 27.1(o), 411(1). Section 108(o) of the Act defines "occupational disease" to include:

> [d]iseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

77 P.S. § 27.1(o). Section 301(c)(1) of the Act defines "injury" to include:

> an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury.

77 P.S. § 411(1). Claimant argues that the WCJ's findings of fact establish that Decedent's lung cancer was caused by his exposure to smoke and diesel fuel emissions as a volunteer firefighter. Employer argues Claimant never pursued benefits under either of these provisions and, therefore, is barred from doing so now. We disagree for a number of reasons.

9

First, Claimant's counsel did raise Section 301(c) at a hearing on July 25, 2012, before the WCJ. (R.R. at 35.) Second, the fatal claim petition is silent as to what theory of compensability Claimant was pursuing.[11] Third, Claimant was not aggrieved until the Board reversed the WCJ findings, and therefore did not have any reason to raise the WCJ's and/or Board's failure to look at other theories earlier. Fourth and finally, the case law is well established that a claimant can proceed under theories of compensability that were not previously pleaded. See City of Phila. v. Workers' Comp. Appeal Bd. (Cospelich), 893 A.2d 171, 179 (Pa. Cmwlth. 2006) (finding "the form of the petition [filed] is not controlling where the facts warrant relief, and that if a claimant is entitled to relief under any section of the Act, his petition will be considered as filed under that section") (citation omitted). The Pennsylvania Supreme Court has affirmed this practice. See Gen. Refractories Co. v. Workmen's Comp. Appeal Bd. (Wright), 635 A.2d 120, 122-23 (Pa. 1993). This is the case whether or not the claimant attempts to amend the petition. Long v. Workmen's Comp. Appeal Bd. (Anchor Container Corp.), 505 A.2d 369, 373 (Pa. Cmwlth. 1986). Therefore, the proper course is to vacate the Order denying Claimant benefits and remand the record to the Board for consideration of whether Sections 301(c)(1) and/or 108(o) provide a basis for recovery. Long, 505 A.2d at 373 (citing Leed v. Workmen's Comp. Appeal Bd. (Quaker Alloy Casting Co.), 504 A.2d 433, 437 (Pa. Cmwlth. 1986)).

---

[11] Employer argues the lifetime claim petition filed was clearly proceeding under Section 108(r) and apparently urges this Court to conclude that the fatal claim petition is based on a similar theory. We decline to make this inference, particularly given Claimant counsel's representation to the contrary at the July 25, 2012 hearing.

10

Accordingly, we will vacate the Board's Order and remand for proceedings consistent with this opinion.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cheryl Steele and Roy Steele : 
(deceased), : 
                  Petitioner : 
               : 
          v. :   No. 875 C.D. 2016
               : 
Workers' Compensation Appeal : 
Board (Findlay Township), : 
              Respondent : 

## O R D E R

    **NOW**, March 8, 2017, the order of the Workers' Compensation Appeal Board dated March 25, 2016, at Appeal No. A14-1039, is vacated, and the record is remanded to the Board for further proceedings consistent with this opinion.

    Jurisdiction relinquished.

 

 

                              _____

                              **RENÉE COHN JUBELIRER,** Judge