IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Findlay Township,                       :
                                        :
                      Petitioner        :
                                        :
              v.                        :   No. 6 C.D. 2020
                                        :   Submitted: September 4, 2020
Workers' Compensation Appeal            :
Board (Steele),                         :
                                        :
                      Respondent        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: January 7, 2021


            Findlay Township (Township/Employer) petitions for review of an
adjudication and order of the Workers' Compensation Appeal Board (Board) that
granted the fatal claim petition filed by Cheryl Steele (Claimant), following the death
of her husband, Roy Steele (Decedent).  In so doing, the Board affirmed the decision
of the Workers' Compensation Judge (WCJ), following remand, which found that
Decedent died from a disease sustained in the course of his work as a firefighter,
entitling Claimant to benefits under the Workers' Compensation Act (Act).[1]
Employer contends that the Board erred in granting the fatal claim petition because
Claimant did not establish the date that Decedent was last exposed to a hazard related

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1, 2501-2710.

to his disease, *i.e.*, lung cancer. Additionally, Employer claims that the methodology used by Claimant's medical expert to assess the case does not comport with *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (addressing the admissibility of scientific evidence). For the following reasons, we affirm the Board.

## I. Background

Decedent was a volunteer firefighter for 42 years with the Township's Imperial Volunteer Fire Department. He was diagnosed with lung cancer on October 29, 2009, and died in 2011. On June 8, 2012, Claimant filed a lifetime claim petition on Decedent's behalf and, on June 11, 2012, a fatal claim petition, claiming that Decedent's cancer was caused by exposure to carcinogens recognized as Group 1 carcinogens by the International Agency for Research on Cancer (IARC) and, therefore, Decedent was entitled to total disability benefits pursuant to Section 108(r) of the Act, 77 P.S. § 27.1(r).[2]

Before the WCJ, Claimant testified that she was married to Decedent from 1968 through August 5, 2011, which was the date he died of lung cancer at the age of 62. During that time, he was employed for 14 years at Wyckoff Steel as a crane operator, followed by 29 years at Schroeder Industries as a machine tool operator. He was a former cigarette smoker, beginning at age 16 and quitting at age 32.

Decedent became a volunteer firefighter in 1968. He rose through the ranks and eventually became the fire chief. In 2004, due to high blood pressure, he resigned as chief. However, he accepted a position as captain and remained an active firefighter.

---

[2] Section 108(r) was added by Section 1 of the Act of July 7, 2011, P.L. 251, and established "[c]ancer suffered by a firefighter" as an occupational disease.

Claimant presented the testimony of Timothy Cain. Cain was a volunteer firefighter from 1999 to 2006. Cain estimated that he responded to approximately 60 fires with Decedent from 1999 to 2006. He approximated that over the course of a year, the fire station responded to 3 structural fires, 10 vehicle fires, 6 brush fires, and 5 rubbish fires.

Cain witnessed Decedent fighting fires. Also, as chief, Decedent went into structures after the fire was suppressed to see if hotspots remained. Smoke remains inside a building following suppression of a fire. Decedent used a self-contained breathing apparatus (SCBA) when entering active structural fires, but not when fighting exterior fires or when he entered a building after suppression of the fire.

Decedent was also exposed to fumes from the diesel powered fire trucks at the station. From 1999 onward, Decedent was responsible for completing a monthly inspection of the fire trucks. During the inspections, the trucks were left on and running inside the station for approximately 90 minutes. No system was in place to capture the diesel emissions, and thus, diesel fumes collected and remained in the station during the inspections.

Next, Claimant presented the testimony of Christopher Arnal, a volunteer firefighter from 2005 through 2010. During that time, Arnal was a lieutenant and Decedent was a captain. Arnal responded to about 12 structural fires with Decedent over that period. He recalled Decedent actively fighting at two of the structural fires. Following suppression of the fires, he saw Decedent enter the structures without a SCBA. Decedent was exposed to smoke at all of the structural fires and his gear was covered with soot. Additionally, Decedent continued to

3

complete the monthly truck inspections that exposed him to diesel fumes, even after his cancer diagnosis in 2009.

Claimant presented the deposition testimony of Barry L. Singer, M.D., who testified as a medical expert. Dr. Singer is board certified in oncology, hematology, and internal medicine. He maintained a medical practice, which included treatment of patients with lung cancer. However, he was not board certified in occupational medicine and not actively involved in clinical research.

Dr. Singer testified that the evidence established Decedent was a firefighter for 42 years. He was exposed to carcinogens while conducting monthly inspections of the diesel fire trucks. He fought residential, commercial, vehicle, rubbish, and chemical fires. He fought two to three interior structural fires per year. When Decedent became chief, he did not actively fight fires. However, he was exposed to carcinogens when examining the scene of the fire after suppression.

Dr. Singer has been reviewing files in workers' compensation cases since 2008. He has read extensively on the issue of firefighters' exposure to carcinogens. He relied on articles from epidemiologists and toxicologists regarding the types of carcinogens common in firefighting. Dr. Singer determined that firefighters are exposed to Group 1 carcinogens in diesel fumes, smoke, and soot. He uses the differential diagnosis method in evaluating firefighter cases. He considers whether firefighting was a substantial contributing factor, meaning if the factor did not exist, and whether it is more likely than not the person would not have the disease.

Dr. Singer believed that it is the constellation of exposures that increases firefighters' risk of cancer, as was the case with Decedent. He was a firefighter for 42 years; the length of time he was exposed to carcinogens was the

4

most significant factor in the development of his cancer. Decedent had a history of smoking, but quit at age 32. Dr. Singer stated cessation of tobacco use before age 40 significantly reduces the risk of lung cancer and he did not find it to be a substantial contributing factor in Decedent's death. As such, he opined that Decedent's lung cancer resulted from his firefighting activities.

Employer presented the deposition testimony of Robert Bradburn, the Township's fire chief from 2007 onward. He managed the paperwork at the station and has participated in the National Fire Reporting System since 2011. He advised that the station averages 150 calls per year, with approximately 6 to 8 resulting in an actual fire.

Bradburn never witnessed Decedent fight a fire. He claimed that Decedent remained in his vehicle while managing a fire when he was chief. Decedent did enter the building once the fire was suppressed. However, Bradburn claimed there were no structure fires in the Township from 2004 to 2008.

Employer also presented the deposition testimony of Julia Greer, M.D., a professor at the University of Pittsburgh School of Medicine, as its medical expert on the cause of Decedent's lung cancer. Dr. Greer has a master's degree in public health and cancer epidemiology. She stated that 90% of lung cancers are associated with cigarette smoking. She opined that Decedent's risk of lung cancer was dramatically reduced when he quit smoking in 1982. Nonetheless, he was a heavy smoker from age 16 to 32. He also worked in a steel mill, which would have magnified the effects of his smoking. Decedent cut steel while working at Schroeder Industries and metal dust is a known carcinogen.

Dr. Greer did not believe that Decedent's service as a firefighter played a major role in his lung cancer diagnosis. Bradburn's testimony and records of fire

5

alarms between 1996 and 2012 showed few actual fire runs. Further, there are no good studies on the risk of cancer in firefighters, and epidemiology is the only way it can be studied. As such, the most likely causes of Decedent's cancer were his age, his smoking history, and his work in a steel mill.

At the hearing before the WCJ, Employer interposed an objection to Dr. Singer's opinions, claiming that he was incompetent to testify based on *Frye*. In support, Employer presented the deposition testimony of Tee L. Guidotti, M.D., who is board certified in internal, pulmonary, and occupational medicine. Dr. Guidotti testified that he has trained in the fields of toxicology and epidemiology. He has published research studies in peer-reviewed journals and investigated the relationships between firefighters and occupational and environmental exposures.

Dr. Guidotti reviewed the basis for Dr. Singer's opinion and could not discern that any methodology was used. He opined that Dr. Singer was not qualified to interpret the studies that he reviewed or engage in a meaningful review of the literature involving firefighters and occupational exposures. Dr. Guidotti explained that he was not providing an opinion on Decedent's diagnosis. Instead, he was rendering an opinion that Dr. Singer was not qualified to link Decedent's lung cancer to his firefighting duties.

Claimant presented additional deposition testimony from Dr. Singer in response to Employer's *Frye* argument. Dr. Singer stated that he considered studies and risk factors regarding firefighters in making his determinations. Each case is individual. He assesses the exposure of the individual to the disease, the individual's medical history, and the individual's age at the time the disease develops. He has 40 years of practice and medical training. As an oncologist, he understands how

6

cancers develop, when they develop, how they progress, and how they have to be treated.

## A. First WCJ Decision

In a decision circulated on September 16, 2014 (First WCJ Decision),[3] the WCJ overruled Employer's objection based on *Frye*, stating that Dr. Singer is board certified in internal medicine, hematology, and medical oncology. He treats cancer patients, including those with lung cancer. As such, the WCJ determined that he was competent to testify. First WCJ Decision, Claimant's brief, Appendix A.

The WCJ found Claimant, Cain, and Arnal credible. First WCJ Decision, Findings of Fact No. 13(a)-(b), at 11; Claimant's brief, Appendix A. The two firefighters provided testimony of their own experiences regarding firefighting. Both credibly described Decedent's exposure to smoke, diesel emissions, and soot. Their testimony supported Dr. Singer's opinion that as a firefighter, Decedent was continually exposed to IARC Group 1 carcinogens, which cause lung cancer. Bradburn's testimony was deemed credible, but only where it was consistent with Cain and Arnal's testimony. First WCJ Decision, Findings of Fact No. 13(c), at 11; Claimant's brief, Appendix A.

The WCJ found Dr. Singer more credible than Drs. Greer and Guidotti. The WCJ noted that Dr. Greer was not an oncologist and does not treat patients. She agreed that Decedent was exposed to carcinogens as a firefighter, but blamed his lung cancer on his history of smoking, even though Decedent stopped smoking 30 years prior to his cancer diagnosis. The WCJ also noted that Dr. Greer failed to

---

[3] Employer did not attach any of the prior decisions of the WCJ, the Board, or this Court to its appellate brief or include them in the Reproduced Record, as required by Pennsylvania Rules of Appellate Procedure 2111, 2152, and 2153, Pa. R.A.P. 2111, 2152, and 2153. Claimant, however, attached them to her brief.

7

review the testimony of Arnal and Cain. First WCJ Decision, Findings of Fact No. 13(d)-(e), at 11; Claimant's brief, Appendix A. As to Dr. Guidotti, the WCJ rejected his generalized opinions on the issue of causation that did not relate specifically to Decedent's personal experiences as a firefighter. First WCJ Decision, Findings of Fact No. 13(f), at 11; Claimant's brief, Appendix A. Accordingly, the WCJ granted the fatal claim petition.[4] First WCJ Decision, Conclusions of Law No. 2, at 13.

## B. First Board Opinion & Order

Employer appealed to the Board, challenging the First WCJ Decision on two grounds. First, Employer argued that the WCJ erred in awarding benefits because Claimant failed to introduce Pennsylvania Fire Information Reporting System (PennFIRS) reports to establish that Decedent was directly exposed to carcinogens. Second, Employer contended that the WCJ erred in rejecting its *Frye* challenge to Claimant's medical expert, Dr. Singer. The Board agreed with Employer on the first issue and concluded that it need not reach the second issue. *See* First Board Opinion & Order dated March 25, 2016; Claimant's brief, Appendix B.

The Board held that volunteer firefighters were required, under Section 301(f) of the Act, 77 P.S. §414,[5] to introduce PennFIRS reports in order to establish direct exposure to IARC Group 1 carcinogens. Before the WCJ, Claimant, along with two fellow firefighters, testified about Decedent's exposure to carcinogens. The Board deemed this lay witness testimony to be insufficient under the Act. As such, the Board reversed the First WCJ Decision.

---

[4] Claimant's lifetime claim petition was denied. Claimant did not appeal the denial.

[5] Section 301(f) was added by Section 2 of the Act of July 7, 2011, P.L. 251.

8

## C. Proceedings Before This Court

Claimant petitioned for review to this Court. *See Steele v. Workers' Compensation Appeal Board (Findlay Township)*, 155 A.3d 1173 (Pa. Cmwlth. 2017). We agreed with the Board that Section 301(f) of the Act mandates the following:

> Any claim by a member of a volunteer fire company shall be based on evidence of direct exposure to a carcinogen referred to in [S]ection 108(r)[, 77 P.S. §27.1(r),] as documented by reports filed pursuant to [PennFIRS] and provided that the member's claim is based on direct exposure to a carcinogen referred to in [S]ection 108(r).

77 P.S. §414. Because Decedent was a volunteer firefighter and PennFIRS reports were not entered into evidence, Claimant could not prevail under Section 108(r) of the Act. *Steele*, 155 A.3d at 1178.

However, we noted that other sections of the Act, namely Section 108(o), 77 P.S. §27.1(o),[6] and Section 301(c)(1), 77 P.S. §411(1),[7] could possibly provide Claimant with relief. In response to Employer's argument that Claimant was barred from pursuing benefits from a different section of the Act, we observed that Claimant's fatal claim petition was silent as to the theory of compensability that she was pursuing and that, if she was entitled to relief under any section of the Act, the petition would be considered as filed under the appropriate section. *See City of*

---

[6] Section 108(o) establishes, as an occupational disease, "[d]iseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen." 77 P.S. §27.1(o). Section 108(o) was added to the Act by Section 1 of the Act of October 17, 1972, P.L. 930.

[7] Section 301(c)(1) provides for compensation for injuries arising in the course of employment "and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury . . . ." 77 P.S. §411(1).

9

*Philadelphia v. Workers' Compensation Appeal Board (Cospelich)*, 893 A.2d 171, 179 (Pa. Cmwlth. 2006); *see also General Refractories Co. v. Workmen's Compensation Appeal Board (Wright)*, 635 A.2d 120, 122-23 (Pa. 1993). As such, we vacated the Board's order and remanded for consideration of whether Section 108(o) or Section 301(c)(1) provide a basis for recovery. *Steele*, 155 A.3d at 1179.

### D. Second WCJ Decision

On remand, in a decision circulated on May 1, 2018 (Second WCJ Decision), the WCJ granted the fatal claim petition pursuant to Section 301(c)(1) of the Act. The WCJ reiterated her prior findings of fact and credibility determinations, adding that, for purposes of Section 301(c)(1), Claimant established that Decedent's last exposure occurred within 300 weeks of his death, *i.e.*, after November 5, 2005. This was based on Arnal's testimony that he and Decedent fought a dozen fires together from 2005 and 2010 and Cain and Arnal's testimony that Decedent was exposed to diesel fuel fumes at the fire station from 1999 through 2009. Thus, the WCJ concluded that Claimant met her burden of proof that the exposure occurred within 300 weeks of Decedent's death on August 5, 2011. *See* Second WCJ Decision, Claimant's brief, Appendix D.

### E. Second Board Opinion & Order

Employer appealed to the Board, arguing Claimant did not meet her burden of proving Decedent's last exposure was within 300 weeks of his death. Employer argued that Decedent's last exposure to a cancer hazard had to be no earlier than November 5, 2005, and pointed out Bradburn's testimony that Decedent

10

did not respond to a structure fire from 2004 to 2008. Further, none of the fire station incident reports showed that Decedent responded to any of the other reported fires.

The Board rejected Employer's argument. The WCJ credited Arnal's testimony that Decedent completed monthly equipment checks, which exposed him to diesel emissions through 2009. Further, he and Decedent responded to about 12 structure fires and 6 car, trash, or grass fires between 2005 and 2010. The Board therefore determined that Arnal's testimony was sufficient to establish that Decedent was exposed to cancer hazards within 300 weeks of his death.

Employer also argued that the WCJ failed to properly address its *Fr*ye argument. Employer contended that the WCJ should have realized that Dr. Guidotti's testimony established Dr. Singer's lack of adherence to scientific principles. The Board disagreed. The Board noted that Dr. Singer was a board-certified oncologist and treated cancer patients. He testified that he was familiar with how cancers develop, and part of his practice includes examining the etiology of cancers. He reviewed and relied upon scientific and medical studies to determine causation. Moreover, the WCJ found that Dr. Singer testified credibly that his methods were common in the practice of oncology. As such, the Board affirmed the Second WCJ Decision. *See* Second Board Opinion & Order dated December 9, 2019, Claimant's brief, Appendix E.

## II. Issues

Employer now petitions this Court for review of the Second Board Opinion and Order; its issues are twofold.[8] First, Employer claims the Board erred

---

[8] On review, we determine whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were supported by substantial **(Footnote continued on next page…)**

11

in holding that the evidence established Decedent's last date of exposure was within the statutory deadline of 300 weeks. Second, Employer argues the Board erred in its application of *Frye* to Dr. Singer's testimony.

### III.   Analysis

Regarding Employer's first issue, we begin with a review of Section 301(c)(1) of the Act, which provides:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under [Section 301(f) of the Act, 77 P.S. §414,] arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and *wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury.* The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or

---

competent evidence. *Stepp v. Workers' Compensation Appeal Board (FairPoint Communications, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. §411(1) (emphasis added). When Claimant originally pursued her claim under Section 108(r) of the Act, she was entitled to the 600-week time limit set forth in Section 301(f)

> with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, *claims filed pursuant to cancer suffered by the firefighter under [S]ection 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease*.

77 P.S. §414 (emphasis added). Under Section 301(c)(1), she must now establish that Decedent's death resulted from his work injury and that its resultant effects occurred within 300 weeks of the injury.

In *Kimberly Clark Corporation v. Workers' Compensation Appeal Board (Bromley)*, 161 A.3d 446 (Pa. Cmwlth. 2017), we addressed the burden of proof required in a Section 301(c)(1) claim. We explained:

> [The law does not define] precisely when the "injury" occurs in disease as injury cases under Section 301(c)(1) of the Act. However, David B. Torrey and Andrew E. Greenberg, in *Workers' Compensation: Law & Practice* (3[d] ed. 2008), opined: "The commencement date applicable to a disease as injury case [under Section 301(c)(1) of the Act] is appropriately conceived of as the *last date of injurious exposure* to the agent causing the disease, whether or not such last exposure is disabling." *Id.* § 5:19 (emphasis added). Specifically, for death claims in disease as injury cases, Torrey and Greenberg declared that if "the employee dies more than 300 weeks after the

13

injury (last injurious exposure to the hazardous condition), then the fatal claim will be barred." *Id.* § 5:20.

*Kimberly Clark*, 161 A.3d at 463-64 (emphasis in original). As such, a claimant must prove, as follows:

> [W]hether a hazard exists is a question of fact for the [WCJ] to determine. Furthermore, [. . .] a claimant's burden of proof related to this issue is not overly demanding. *We have also asserted that '[s]ince claimant's exposure is a factual question, the claimant need not present scientific evidence or expert testimony to prove the existence of the hazard in the workplace.' Mauger [&] Co[.] v. Workmen's Comp[.] Appeal B[d.] (Waltz)*, [598 A.2d 1035, 1037 (Pa. Cmwlth.] 1991). '*The [WCJ] may rely solely on the testimony of the claimant or other witnesses to prove the existence of and exposure to the hazard.*' *Id.*

*Id*. at 465 (emphasis added) (quoting *Gray v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 657 A.2d 77, 80-81 (Pa. Cmwlth. 1995)).

Employer claims that the WCJ had no evidence on which to base a finding of fact that Decedent was injuriously exposed to a hazard that caused his cancer on or after November 5, 2005. The WCJ relied on the testimony of Arnal to establish Decedent was exposed to cancer-causing agents within 300 weeks of his death. Employer claims that Arnal's testimony is insufficient because Bradburn's testimony refutes that Decedent's last date of injurious exposure was within 300 weeks of his death.

Claimant counters that the WCJ credited Cain and Arnal, not Bradburn. Cain and Arnal's testimony establishes that Decedent continued to be exposed to smoke and diesel fumes through 2010. Further, station records, signed by Bradburn, show that Decedent responded to an apartment building fire in 2008. Reproduced Record (R.R.) at 1563a-65a.

14

The law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *University of Pennsylvania v. Workers' Compensation Appeal Board (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Griffiths v. Workers' Compensation Appeal Board (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). When considering whether the WCJ's decision is supported by substantial evidence we "must view the evidence in a light most favorable to the party who prevailed before the factfinder" and "draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003). "[I]t does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ. Rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Id*.

Here, there is ample evidence of record to support the WCJ's conclusion that Decedent was exposed to carcinogens on or after November 5, 2005. The WCJ credited Arnal's testimony and rejected Bradburn's to the extent it was inconsistent with Arnal's. Arnal testified that he and Decedent responded to about 12 structural fires between 2005 and 2010, and Decedent continued to complete the monthly truck inspections, where he was exposed to diesel emissions, even after his 2009 cancer diagnosis. The record also shows Decedent responded to a fire at an apartment building on June 27, 2008. R.R. at 1563a-65a (Fire Incident Report states building suffered fire and smoke damage; Bradburn signed documentation that Decedent responded to fire). As such, we reject Employer's first contention of error.

15

We now turn to Employer's second claim of error involving *Frye*. Pennsylvania Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa. R.E. 702. Of relevance here is Rule 702(c), about which the comment to Rule 702 advises:

> Pa. R.E. 702(c) differs from [Federal Rule of Evidence (F.R.E.)] 702 in that it reflects Pennsylvania's adoption of the standard in [*Frye*]. The rule applies the "general acceptance" test for the admissibility of scientific, technical, or other specialized knowledge testimony. This is consistent with prior Pennsylvania law. *See Grady v. Frito-Lay, Inc.*, [839 A.2d 1038 (Pa. 2003)]. The rule rejects the federal test derived from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Pa. R.E. 702, comment. A *Frye* hearing is necessary when there are grounds to believe that an expert witness has not applied accepted scientific methodology to reach his conclusion. *Betz v. Pneumo Abex LLC*, 44 A.3d 27, 74 (Pa. 2012). Its purpose is to keep "junk science" out of the record. *Id.* Our Supreme Court has explained that (1) the *Frye* rule "applies to an expert's methods, not his conclusions"; (2) "the proponent of the expert scientific evidence bears the burden of proof"; and

16

(3) "the standard of appellate review . . . is the abuse of discretion standard." *Grady*, 839 A.3d at 1047.

Employer accepts the Board's statement that the proponent of scientific evidence must demonstrate his methodology is generally accepted by scientists in the relevant field as a method for reaching a conclusion to which the expert will testify. However, Employer argues that the Board misstated the relevant field of science. The Board determined that Dr. Singer's methods are common in the practice of medical oncology. But, Dr. Singer was not diagnosing a patient's cancer where the differential diagnosis method may be applicable. Rather, he was offering an opinion on whether certain carcinogens cause cancer.

Employer contends that numerous scientific studies have been conducted on the issue of whether the occupation of firefighter is a substantial contributing factor to the development of certain kinds of cancer. There is a lack of consensus in the scientific community on the issue, *i.e.*, studies have reached conflicting results.

Dr. Guidotti has conducted studies and written articles regarding firefighters' cancer risks. He is an expert on the methodology used by scientists in examining a potential agent and a given cancer. He claims Dr. Singer failed to adhere to any accepted method for determining causation and only scantily reviewed literature on the topic. For example, Dr. Singer used an article written by Dr. Guidotti, without referring to subsequent articles that more fully interpret the results.

Claimant responds that Dr. Singer utilized a competent scientific method to determine whether Decedent's exposures to IARC Group 1 carcinogens were a significant contributing factor in the cause of his lung cancer. Claimant states that *Frye* applies to "novel" scientific evidence. Here, there is nothing novel about

an oncologist reviewing Decedent's work history, exposure history, and medical records in order to provide an opinion as to whether the exposures constituted significant contributing factors in the development of lung cancer. Moreover, Dr. Guidotti offered no opinion on Dr. Singer's method of proving causation, and his epidemiologic opinion is not relevant to the specific factual issues presented in this claim.

This case began as an occupational disease claim wherein Claimant had the burden of proving, under Section 108(r) of the Act: "Cancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the [IARC]." 77 P.S. §27.1(r). As explained in *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 195 A.3d 197 (Pa. 2018):

> [Section 108(r) of the Act] requires the claimant to establish a general causative link between the [decedent's] type of cancer and a Group 1 carcinogen. In other words, the claimant must produce evidence that it is **possible** that the carcinogen in question caused the type of cancer with which the [decedent was] afflicted. It does not require the claimant to prove that the identified Group 1 carcinogen **actually** caused [decedent's] cancer. Section 108(r) embodies a legislative acknowledgement that firefighting is a dangerous occupation that routinely exposes firefighters to Group 1 carcinogens that are known to cause various types of cancers. The "general causation" requirement under Section 108(r) constitutes a recognition that different types of cancers have different etiologies and it weeds out claims for compensation for cancers with no known link to Group 1 carcinogens.

*Id*. at 208 (emphasis in original) (footnotes omitted).

18

*Sladek* involved a claim that a firefighter's malignant melanoma was work related. As such, there was a question as to whether that type of cancer was an occupational disease associated with firefighting. The Supreme Court stated:

> In this regard, epidemiological evidence is clearly relevant and useful in demonstrating general causation. Epidemiology deals with, [*inter alia*], the identification of potentially causative associations in various populations between possible causative agents and the resulting incidence of particular diseases and seeks to generalize those results. In so doing, epidemiology may provide "useful information as to whether there is a relationship between an agent and a disease and, when properly interpreted, can provide insight into whether the agent can cause the disease." Given its focus on identifying generalized causal relationships between potential causative agents and the resulting incidence of disease, epidemiology's focus on statistical analysis may be uniquely suited to illuminate whether there is a general causal relationship between types of cancer and Group 1 carcinogens.

*Id*. at 208-09 (internal citations omitted) (footnote omitted). As a result, the Supreme Court ordered the matter remanded to the Board to determine whether the claimant's expert satisfied the *Frye* standard in linking malignant melanoma to firefighting.[9]

Claimant is now before the Court pursuant to Section 301(c)(1) of the Act, which requires her to prove an injury "arising in the course of [Decedent's] employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury." 77 P.S. §411(1). As such, it is Claimant's burden of proving Decedent's death was causally related to the disease of lung cancer. *Kimberly Clark*, 161 A.3d at 451. It is well-settled that Section 301(c)(1) of the Act encompasses diseases such as cancer. *Id.*

---

[9] The opposing experts in *Sladek* were Dr. Singer and Dr. Guidotti.

In *Kimberly Clark*, the claimant brought a fatal claim petition under Section 301(c)(1) of the Act, claiming that the decedent's death from bladder cancer was caused by chemicals in the employer's workplace. The employer operated a paper manufacturing company where the decedent worked as an electrician. The claimant presented evidence that the decedent's work clothes often had small holes and were covered with paper dust and dye. A co-worker testified to various types of chemicals used in the workplace. The claimant's expert, Dr. Singer, testified that certain chemicals can seep into urine and damage the bladder. Benzene found in cigarette smoke is a common cause of bladder cancer. However, workers who are not provided with adequate protections when using certain chemicals are at a high risk of exposure. Dr. Singer presented studies linking higher bladder cancer risks with workers exposed to dye production, chlorinated solvents, and asbestos. The employer's expert refuted that these exposures were linked to bladder cancer.

The WCJ found in favor of the claimant and the employer appealed, claiming, *inter alia*, that the claimant did not meet her burden of proof. The Board rejected the employer's argument and it petitioned this Court for review. We explained:

> Dr. Singer received his medical degree from Johns Hopkins University and is board[ ]certified in internal medicine. He has specialized in oncology (75% of his current practice) since the 1970s, and he has been involved with the treatment of bladder cancer over his 40 years of practice. Based upon his experience and extensive review of [the decedent's] medical records, the depositions, [the employer's] MSDS [(Material Safety Data Sheet)], NIOSH [(National Institute for Occupational Safety and Health)], OSHA [(Occupational Safety and Health Administration),] and IARC literature and journal articles, he concluded that [the decedent's] co-exposure to xylene, asbestos, silica[,] and dyes over the years while working

20

at [the employer's] facility since 1973 until August 11, 2005[,] was the substantial cause of the bladder cancer from which [the decedent] died.

*Id.* at 467 (internal citations omitted) (footnote omitted).

This Court also rejected the employer's claim that Dr. Singer's testimony lacked foundation because he did not establish a definitive link between the chemicals and bladder cancer and failed to establish scientific facts or data based on his own knowledge. We stated:

> [T]he Pennsylvania Rules of Evidence prescribe a threshold for admission of expert testimony dependent upon the extent to which the expert's opinion is based on facts and data:
>
> > Rule 703. Bases of opinion testimony by experts
> >
> > The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
>
> Pa. R.E. 703.

*Id.* at 467 n.26. We then held:

> Where, as here, Dr. Singer's opinions were based upon his experience and extensive review of [the decedent's] medical records, the depositions, [the employer's] MSDS, NIOSH, OSHA[,] and IARC literature and journal articles, there was a foundation for a link between asbestos and bladder cancer and, thus, the WCJ did not abuse his discretion by overruling [the employer's] objection.

*Id.*

In the present case, as in *Kimberly Clark*, Claimant is proceeding under Section 301(c)(1) of the Act, and as reiterated above:

21

[W]hether a hazard exists is a question of fact for the [WCJ] to determine. Furthermore, [. . .] a claimant's burden of proof related to this issue is not overly demanding. *We have also asserted that '[s]ince claimant's exposure is a factual question, the claimant need not present scientific evidence or expert testimony to prove the existence of the hazard in the workplace.'* *Mauger*[, 598 A.2d at 1037]. *'The [WCJ] may rely solely on the testimony of the claimant or other witnesses to prove the existence of and exposure to the hazard.'* *Id.*

*Kimberly Clark*, 161 A.3d at 464 (emphasis added) (quoting *Gray*, 657 A.2d at 80-81).

Under Section 301(c)(1) of the Act, Dr. Singer is not determining the overall risk of lung cancer in the occupation of firefighting. He is addressing the individual risk of lung cancer exposure one particular decedent faced at work. In doing so, he used the differential diagnosis method.[10] Differential diagnosis "involves listing all possibilities in terms of diseases and causes, and then eliminating causes until a *final* or *most probable* diagnosis is reached." *Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)*, 147 A.3d 35, 41 (Pa. Cmwlth. 2016) (emphasis in original).

Here the WCJ found that Decedent was exposed to smoke, fumes, soot, and diesel emissions, all of which are IARC Group 1 carcinogens that cause lung

___

[10] As stated in *Stange v. Janssen Pharmaceuticals, Inc.*, 179 A.3d 45, 55 (Pa. Super. 2018):

There is nothing scientifically novel about using differential diagnosis to conclude that [swelling of breast tissue] was caused by [an antipsychotic medication]. Certainly differential diagnosis is a generally accepted methodology; indeed, [the defendant] does not dispute the validity of differential diagnosis generally. *See Cummins v. Rosa*, 846 A.2d 148, 151 (Pa. Super. 2004) (*Frye* did not apply where the methodology employed by the plaintiffs' medical experts was generally accepted among the medical community for diagnosis and treatment; plaintiffs' experts analyzed plaintiff-wife's medical records and relied upon their personal expertise to reach a conclusion regarding the source of her injuries).

cancer. Second WCJ Decision, Findings of Fact No. 12(c), at 11; Claimant's brief, Appendix D. Employer has not disputed that these carcinogens can cause lung cancer or that Decedent was exposed to them.

As addressed by the Board, Dr. Singer testified that in rendering an opinion, he relied on the "IARC Monograph," which evaluates cancer risks in humans, and the "IOM [(Institute of Medicine)] Manual." Second Board Opinion & Order at 9; Claimant's brief, Appendix E. Dr. Singer also reviewed the "AMA [(American Medical Association)] Guides for the Evaluation of Disease and Injury Causation." *Id*. at 10. He reviewed the AMA Guides on methodology, which discusses reviewing and assessing the available evidence. *Id*. at 19. Dr. Singer advised that the AMA Guides required a review of the available literature, which he completed. *Id*. He also reviewed Decedent's medical records and the testimony of the lay witnesses and medical experts that participated in the case. He concluded the length of time, 1968 through 2010, that Decedent was exposed to Group 1 carcinogens was the most significant contributing factor to the development of his lung cancer.

As in *Kimberly Clark*, Claimant's burden of proof was not whether cancer was an occupational risk; it was whether the hazards Decedent was exposed to in his workplace caused his cancer. We find no abuse of discretion by the Board in concluding Dr. Singer's methodology was competent.

## IV. Conclusion

For all the foregoing reasons, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Findlay Township,                                    :
                                                     :
                              Petitioner             :
                                                     :
                v.                                   : No. 6 C.D. 2020
                                                     :
Workers' Compensation Appeal                         :
Board (Steele),                                      :
                                                     :
                              Respondent             :

# **O R D E R**

AND NOW, this 7th day of January, 2021, the order of the Workers' Compensation Appeal Board, dated December 9, 2019, is hereby AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge