IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Philadelphia Eagles, Inc., | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | |
| v. | : | No. 1060 C.D. 2021 |
| | : | No. 1061 C.D. 2021 |
| Emmanuel Acho (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | Submitted: May 6, 2022 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE STACY WALLACE, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                          FILED:  February 3, 2023

In these consolidated cases, Petitioner Philadelphia Eagles, Inc. (Employer) petitions for review of the September 1, 2021 order of the Workers' Compensation Appeal Board (Board). The Board affirmed the order of Workers' Compensation Judge Stephen Harlan (WCJ), who granted Respondent Emmanuel Acho's (Claimant) Claim Petition brought under the Workers' Compensation Act (Act)[1] and awarded temporary partial disability benefits related to a thumb injury Claimant sustained while playing for Employer. Upon review, we affirm.[2]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] These cases involve two separate but related injuries. Case No. 1060 C.D. 2021 relates to an injury that occurred on August 23, 2015. Case No. 1061 C.D. 2021 relates to an injury that occurred on August 11, 2015. The cases were heard together before the WCJ and Board, and we directed consolidation in this Court by order dated January 20, 2022.

# I.    FACTS AND PROCEDURAL HISTORY

The facts material to our disposition of Employer's petition are not in dispute and can be summarized from the WCJ's findings of fact, as follows.  Claimant is a 28-year-old former linebacker for Employer.  (WCJ Findings of Fact (FOF) No. 2(a); Reproduced Record (R.R.) 26a.)  He played for Employer in 2013 and 2014 and again was on Employer's roster in 2015.  On August 11, 2015, while practicing, Claimant injured his thumb. (FOF Nos. 1, 2(a), (h); R.R. 26a-27a.)  Claimant nevertheless continued to play football, including a pre-season game against the Baltimore Ravens on August 22, 2015.  (FOF No. 2(a); R.R. 26a.)  On August 23, 2022, Claimant fractured the same thumb during practice.  (FOF No. 2(b); R.R. 26a.)  Claimant completed practice and later was treated by Dr. Randall Culp, who performed surgery on Claimant's thumb one or two days after the injury occurred.  (FOF No. 2(b), (c); R.R. 26a.)   Claimant could not participate in any physical activity for approximately three weeks after the surgery.  (FOF No. 2(c); R.R. 26a.)  Claimant was released from Employer's roster immediately after his surgery.  Pursuant to an injury settlement agreement executed according to the applicable collective bargaining agreement, Claimant received three weeks of pay.  (FOF No. 2(c); R.R. 26a-27a.)

After physical rehabilitation, Dr. Culp removed the pins from Claimant's hand and cleared him to play football.   (FOF No. 2(d); R.R. 27a.)   Claimant nevertheless continued to have pain and weakness in the thumb.  (*Id.*)  Claimant re-signed with Employer on November 9 or 10, 2015.  (FOF No. 2(e); R.R. 27a.)  Claimant's thumb remained symptomatic, however, and he did not play in any games in 2015.  He was released by Employer approximately 16 days after being re-signed. (FOF No. 2(f); R.R. 27a.)  Claimant thereafter attempted to try out for other teams, but found that he could not play at his pre-injury level.  He was not offered any positions on any other team and has not played professional football again.  (FOF No. 2(f), (p); R.R. 27a-28a.)   Claimant believes that his thumb injury made him physically unable

2

to play football at a high level, which is why he was never signed by any team after Employer released him in 2015. (FOF No. 2(m), (t); R.R. 29a.)

Although Claimant occasionally saw physicians and trainers at the University of Texas, he did not receive any specific treatment for his injury until 2018, when he saw a physician's assistant at a federal workers' compensation facility near Austin, Texas. He nevertheless has not received any formal medical treatment for his thumb since seeing Dr. Culp. (FOF No. 2(k), (q), R.R. 29a.) He continues to do exercises and therapy weekly. (FOF No. 2(q); R.R. 29a.)

Claimant had one visit with Dr. Greg Vagner on February 20, 2019. Dr. Vagner reviewed Dr. Culp's treatment records and a magnetic resonance image (MRI) of Claimant's thumb. (FOF No. 4(c)-(e); R.R. 30a-31a.) Dr. Vagner also ordered and reviewed the results of a computerized tomography (CT) scan of Claimant's thumb, which indicated some displacement within the joint and mild to moderate post-traumatic osteoarthritis. (FOF No. 4(f); R.R. 31a.) Before the WCJ, Dr. Vagner testified that (1) the displacement and arthritis in Claimant's thumb was related to his August 2015 injury; (2) the post-traumatic arthritis more than likely resulted in pain and decreased function in his thumb; (3) ongoing treatment, potentially to include surgery, would be required; and (4) displacement, arthritis, and joint pain interfere with an NFL player's ability to use his hand. (FOF No. 4(g)-(l); R.R. 31a-32a.)

Employer presented the medical testimony of Dr. Donald Leatherwood, an orthopedic surgeon. Dr. Leatherwood conducted an independent medical examination (IME) of Claimant on September 12, 2019. He noted some limitations in the range of motion and grip strength in Claimant's right thumb. (FOF No. 5(c), R.R. 32a.) He further confirmed that Claimant's "Bennett's fracture," the common term for this injury, had healed after the surgery in 2015, with a resulting "step-off" or displacement of approximately one millimeter and post-traumatic arthritis. (FOF No. 5(e); R.R. 33a.) Dr. Leatherwood also testified that the post-traumatic arthritis was

3

caused by the August 2015 thumb injury and that it might require additional treatment in the future. (FOF No. 5(g), (i); R.R. 33a.)

On August 20, 2018, Claimant filed a Claim Petition related to his August 23, 2015 injury. (FOF No. 1; R.R. 26a.) He also filed a Petition to Reinstate and Review Benefits related to the August 11, 2015 injury. Employer in turn filed Petitions to Terminate benefits with regard to both injuries. (*Id.*)[3] The WCJ credited Claimant's and Dr. Vagner's testimony to the extent that he found that Claimant's thumb injury rendered him unable to perform his pre-injury linebacker job until he was found by Dr. Leatherwood to be fully recovered as of September 12, 2019. (FOF No. 6; R.R. 34a.) The WCJ further credited Dr. Vagner's testimony that Claimant's injury would interfere with Claimant's ability to perform his linebacker job to a degree that would make it difficult to play at the level required in the NFL. (FOF No. 6; R.R. 35a.) The WCJ accordingly granted Claimant partial disability benefits until September 12, 2019, and granted Employer a three-week credit for the injury settlement reached in 2015. (Conclusion of Law (COL) No. 2, R.R. 36a.) Because Claimant had fully recovered as of September 12, 2019, the WCJ granted Employer's termination petition as of that date. (COL No. 3, R.R. 36a.)[4]

Employer appealed to the Board. Before the Board, Employer argued that the WCJ's decision was not based on substantial, competent evidence, was not reasoned, and was arbitrary and capricious. Employer argued that the WCJ did not

---

[3] Claimant withdrew his Petition to Reinstate and Review benefits related to the August 11, 2015 injury. (FOF No. 1; R.R. 26a.) The WCJ granted Employer's Petitions to Terminate benefits for both injuries. Those orders are not at issue in this appeal.

[4] Claimant resumed classes at the University of Texas and obtained a master's degree in 2017. (FOF No. 2(q); R.R. 29a.) He has worked as a sports commentator since the time his NFL playing career ended, and he also runs a nonprofit organization that built a hospital in Nigeria. (FOF No. 2(q)-(s); R.R. 29a.)

acknowledge evidence that Claimant was capable of playing football within three weeks after his injury and accepted incompetent medical testimony from Dr. Vagner in awarding benefits. The Board nevertheless affirmed. Employer then filed its Petition for Review in this Court on September 29, 2021.

## II.   DISCUSSION

### A.   Issues Raised

Employer raises three issues for our review, which we paraphrase as follows:

> (1)   The evidence relied upon by the WCJ to award total disability benefits from August 23, 2015, to November 10, 2015, was insufficient because it did not establish that Claimant's release from Employer's roster was due to his injury;
>
> (2)   The evidence relied upon by the WCJ to award partial disability benefits from November 10, 2015, through September 12, 2019, was insufficient to establish that Claimant suffered a compensable injury during this period; the WCJ's finding in this regard was arbitrary and capricious; and
>
> (3)   The medical testimony of Claimant's expert, Dr. Vagner, was not competent, credible, or unequivocal in establishing a compensable injury after August 23, 2015.[5]

---

[5] In its Statement of the Questions Involved, Employer presents only a single question for review, namely, whether the Board erred in affirming the WCJ's decision, "as such [d]ecision was not based on substantial, competent evidence, was not reasoned, and was arbitrary and capricious." (Employer's Br. at 4.) Employer then goes on to include the above three subsidiary issues in the argument section of its brief. (*Id.* at 19-23.) We find that these three subsidiary issues are "fairly comprised" within Employer's Statement of Questions Involved. *See* Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 2116(a).

5

**B.** **Analysis**[6]

Because all of Employer's issues relate in some form to the WCJ's consideration of the evidence and factual findings, we first review the scope of both the WCJ's decision-making authority and our review of the WCJ's findings.

> The WCJ, as the ultimate fact-finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight. The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. We are bound by the WCJ's credibility determinations.
>
> Moreover, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence.

*A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238-39 (Pa. Cmwlth. 2013) (internal citations and quotations omitted). Further,

> [n]either the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. Specifically, [s]ection 422(a) of the Act, 77 P.S. § 834, does not permit a party to challenge or second-guess the WCJ's reasons for

---

[6] This Court's standard of review is to determine whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Habib v. Workers' Compensation Appeal Board (John Roth Paving Pavemasters)*, 29 A.3d 409, 411 n.1 (Pa. Cmwlth. 2011).

credibility determinations. Thus, unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal.

*Kimberly Clark Corporation v. Workers' Compensation Appeal Board (Bromley)*, 161 A.3d 446, 462 (Pa. Cmwlth. 2017) (internal citations and quotations omitted).

### 1. Claimant's Release from Employer's Roster

Employer first argues that the WCJ's award of benefits from August 23, 2015 (the approximate date of Claimant's injury), to November 10, 2015 (the approximate date he was re-signed to Employer's roster), "was not based on substantial, competent evidence" that Claimant's loss of earnings during this period was due to his injury. In other words, Employer argues that Claimant did not establish that his release from Employer's roster was due to his August 23, 2015 injury. We disagree.

It is undisputed in the record that Claimant stopped playing football immediately after his injury. Dr. Culp performed surgery one or two days after the injury occurred. Claimant then immediately was released by Employer and was paid an injury settlement pursuant to the collective bargaining agreement between Employer and Claimant's players' union. The pins placed in Claimant's hand were removed approximately three weeks after the surgery, and Claimant at that point was medically released to play. Nevertheless, Claimant testified that his "thumb was still very weak, along with the wrist and the things surrounding the thumb" and that it remained "tender, weak and sore" even after he was released to play. (Claimant's Deposition (Dep.) at 14; R.R. 109a.) Employer then contacted Claimant several months later and re-signed him to the roster on November 9 or 10, 2015. At that time, Claimant still experienced a constant aching in his thumb, and he practiced with a heavily bandaged hand. (*Id.* at 15-16, R.R. 110a-11a.) Although Claimant participated in the special teams and scout team portions of practices, he did not play in any games during this period and again

7

was released from Employer's roster approximately 16 days after being re-signed. (*Id.* at 16-17, R.R. 111a-13a.)

Employer argues that "[Claimant] never testified that from August 23 to November [9 or] 10, 2015, his right thumb pain and achiness prevented him from being a linebacker and was the cause of his loss of earnings. Rather, he admitted that his release in late August 2015 and his re-signing on November [9 or] 10, 2015, was similar to what occurred during the past two seasons." (Employer's Brief at 20.) Although Employer is correct that, in 2013 and 2014, Claimant had been released from and re-signed to Employer's practice and/or active rosters, it also is clear in the record that Claimant played in regular season games in both of those seasons. (*See* FOF No. 2(a), (h), (m); R.R. 26a, 27a, 28a; *see also* Claimant's Dep. at 32-37; R.R. 127a-32a.) In 2015, Claimant was released immediately after the surgery on his thumb and was paid a three-week injury settlement. The 2015 release thus clearly was not routine or based on any past practice, but rather was due to Claimant's injury and perceived inability to play. Claimant testified that, even after being released to play after surgery, the pain in his thumb restricted his ability to return to his pre-injury performance levels. Employer presented no evidence indicating to the contrary. Thus, we conclude that substantial evidence supports, and the WCJ did not err in awarding, payment of total disability benefits for the period between August 23, 2015, and November 10, 2015.

### 2. November 10, 2015 through September 12, 2019

Employer next argues that the WCJ's award of benefits from November 10, 2015, through September 12, 2019, was based on an "arbitrary and capricious" finding that Claimant's injury was compensable during that period. Employer contends that the WCJ ignored or failed to acknowledge that Claimant was cleared to play football three weeks after his injury, sought try-outs with other teams without making any rosters, and failed to support his disability claims with any competent evidence, including any competent medical evidence. Again, we disagree.

8

As noted above, there is substantial evidence in the record that Claimant was released from Employer's roster in August 2015 because of his injury. Although he was cleared to play approximately three weeks later when the metal pins were removed from his thumb, Claimant testified that he experienced ongoing pain, tenderness, and related limitations in his ability to play. Although he tried out with other teams, none hired him. When he was re-signed with Employer on November 9 or 10, 2015, he practiced with a brace and wrapping on his right hand, and his participation was limited to special teams and scouting. He again was released by Employer 16 days later and did not secure employment with any other NFL teams.

Employer claims that it cannot merely be "assumed" that other teams' disinterest in Claimant was due to his injury, but no "assumption" is necessary. The WCJ acknowledged, and Employer largely discounts or ignores entirely, Claimant's pre-injury ability and prospects in the NFL. The evidence of his success and ranking as a professional linebacker and/or special teams player was not meaningfully controverted by Employer, and the WCJ was free to find that Claimant played at a high, exceptional level prior to August 23, 2015. Any detraction from that level of play due to injury could and apparently did tarnish and ultimately eliminate Claimant's prospects to play as a high-performance linebacker in the NFL. Employer's suggestion to the contrary simply is not accurate.

Also inaccurate is Employer's characterization of Claimant's complaints of pain and related disability as "not borne out by any evidence" and "not consistent with any medical record." (Employer's Brief at 20, 21.) Rather, and as more fully discussed *infra,* Claimant presented the medical testimony of Dr. Vagner, whom the WCJ found credible and who opined unequivocally that the condition of Claimant's thumb since the injury was consistent with his complaints of pain and tenderness, which would cause limitations in his ability to engage in physical activity. Claimant testified that, after his surgery in 2015, his thumb remained very weak, tender and sore

9

with a constant and consistent ache. (Claimant's Dep. at 14-17; R.R. 109a-12a.) He further testified that the issues with his thumb limited his ability to play and that he "truly just couldn't do [his] job." (*Id.* at 17; R.R. 112a; FOF No. 2(f), (g); R.R. 27a.) Those issues continue to the present. (FOF No. 2(k); R.R. 29a.) The fact that Claimant at one point subjectively "hoped" and attempted to make the roster of NFL teams, a fact heavily relied upon by Employer, does not change his objective inability to play at a level that would make him attractive to teams. The WCJ found that Claimant's complaints of pain and functional limitations were corroborated by Dr. Vagner's unequivocal medical testimony. We discern no error in that finding and will not disturb it merely because Employer offers alternative explanations for understanding the evidence and medical testimony. Accordingly, we find this issue to be without merit.[7]

### 3. Dr. Vagner's Testimony

Employer finally argues that Dr. Vagner's testimony on Claimant's behalf was not "competent, credible, or unequivocal." Employer argues that the WCJ erred in relying on Dr. Vagner's testimony because Dr. Vagner did not examine Claimant during most of the disability period, lacked foundation for opining that Claimant was disabled prior to February 20, 2019, did not substantiate his opinions with any of Claimant's medical records, and did not testify that Claimant was unable to return to playing professional football as of February 20, 2019. Employer's arguments in this regard mischaracterize the evidence and the WCJ's findings.

---

[7] Employer argues that the WCJ's determination was not "based on substantial, competent evidence or evidence that a reasonable person would accept as supporting an entitlement to total disability benefits." (Employer's Brief at 21.). For the period in question, however, the WCJ did not award total disability benefits. He awarded partial disability benefits based on Claimant's interim employment as a broadcaster. (COL No. 2; R.R. 36a.)

First, although it is true that Dr. Vagner examined Claimant for the first time in February 2019,[8] Dr. Vagner testified that he reviewed Claimant's medical records, including the records from Dr. Culp and the MRI images taken in 2018. Based on those records and his own evaluation of Claimant, Dr. Vagner identified the displacement and post-traumatic arthritis in Claimant's thumb, both of which he attributed to the August 23, 2015 injury. He further opined that those conditions would interfere with Claimant's ability to tackle and perform at the professional level. (R.R. 196a-98a.) Although he did not give an exact date of when those conditions, the arthritis particularly, developed, he nevertheless corroborated Claimant's ongoing claims of limited functionality, pain, and tenderness. The WCJ also credibly found that Dr. Vagner was "uniquely qualified to comment on the functional impairment experienced by a professional football player due to a Bennett's fracture" because he is an orthopedic surgeon with added credentials as a hand specialist and the hand surgeon for the University of Texas and Baylor University athletic departments. (FOF No. 6; R.R. 34a.) The WCJ thus did not err in finding Dr. Vagner's testimony to be competent and more credible than that of Dr. Leatherwood regarding Claimant's functional impairment during the benefits period. *See Kimberly Clark Corporation,* 161 A.3d at 468 (quoting *Mauger & Co. v. Workmen's Compensation Appeal Board (Waltz)*, 598 A.2d 1035, 1041 (Pa. Cmwlth. 1991)) ("As this Court has stated on numerous occasions, it is within the [WCJ's] power to determine which medical witness he or she accepts as credible, in whole or in part.").

Second, Dr. Vagner's opinions were not equivocal. Employer argues that Dr. Vagner's opinions were equivocal because (1) speaking in "generalities" and not based on any medical record, he could not identify at what point during the benefits

---

[8] Notably, Employer's own expert, Dr. Leatherwood, examined Claimant on only a single occasion approximately seven months after Dr. Vagner's examination in February 2019.

period post-traumatic arthritis, pain, and decreased functioning in Claimant's thumb affected his ability to play in the NFL, and (2) he opined that the condition of Claimant's thumb only "likely" impaired his ability to play in the NFL. (Employer's Brief at 22-23.) We again disagree.

> The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review. In such cases, we review the testimony as a whole and may not base our analysis on a few words taken out of context. Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt. Medical testimony is unequivocal if a medical expert testifies, after providing foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists.

*Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012) (internal citations and quotations omitted). The WCJ found as follows:

> After examining Claimant and reviewing the available diagnostic studies, [Dr. Vagner] confirmed the malunion of Claimant's fractured thumb, as well as his post-traumatic arthritis. He unequivocally confirmed that the fracture and malunion are due to the August 23, 2015 injury with [Employer]. Similarly, he confirmed that such an injury would interfere with Claimant's ability to play professional football. The injury would affect Claimant's ability to engage and disengage from blockers and block and tackle other NFL players. He credibly explained how this injury would reduce Claimant's function and make it more difficult to perform at the level necessary to be employed as a professional football player in the NFL. His testimony is completely consistent with all of Claimant's medical records and Claimant's testimony. He unequivocally supports the award of benefits in this matter.

12

(FOF No. 6; R.R. 34a-35a.) This finding is consistent with both Dr. Vagner's and Claimant's testimony. Further, although Dr. Vagner used the words "more than likely" and "most likely" in giving his opinions, he did so after he answered in the affirmative counsel's question as to whether he had formulated his opinions "within a reasonable degree of medical certainty." (R.R. 197a.) Taken as a whole, then, we conclude that the WCJ did not err in relying on Dr. Vagner's testimony, which was unequivocal in supporting the WCJ's award of benefits.[9]

## III. CONCLUSION

We conclude that the WCJ's decision is free of errors of law and violations of constitutional rights. It further is supported by substantial evidence and did not arbitrarily or capriciously disregard any competent evidence. We accordingly affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Dumas did not participate in this decision.

---

[9] Both Dr. Vagner and Dr. Leatherwood testified that Claimant suffered a Bennett's fracture, that joint displacement or "set off" occurred after the fracture healed, and that Claimant subsequently developed post-traumatic arthritis. They disagreed, however, regarding whether the fracture and Claimant's subsequent condition impaired his ability to play in the NFL. Dr. Leatherwood could not substantiate Claimant's subjective complaints of weakness and pain with objective clinical findings, and therefore did not opine that Claimant had any functional impairments that would inhibit his ability to play in the NFL. (FOF No. 7; R.R. 37a.) Because the WCJ, for sufficient reasons, found Dr. Vagner's testimony to be more credible, he did not arbitrarily or capriciously disregard Dr. Leatherwood's testimony.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Philadelphia Eagles, Inc., | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | |
| v. | : | No. 1060 C.D. 2021 |
| | : | No. 1061 C.D. 2021 |
| Emmanuel Acho (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | |

## ***ORDER***

AND NOW, this 3rd day of February, 2023, the Order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge